718 So.2d 1179 (1998)
In re AMENDMENTS TO THE RULES REGULATING THE FLORIDA BAR.
No. 92841.
Supreme Court of Florida.
September 24, 1998.
John F. Harkness, Jr., Executive Director, Edward R. Blumberg, President, Howard C. Coker, President-elect, Cynthia A. Everett, Chair, Rules Committee, Paul F. Hill, General Counsel, and John A. Boggs, Director, Legal Division, Tallahassee, for Petitioner The Florida Bar.
David P. Frankel, pro se, Washington, D.C., Responding.
PER CURIAM.
This matter is before the Court on the petition of The Florida Bar for amendments to the Rules Regulating The Florida Bar. The petition is brought on the authority of the Board of Governors of The Florida Bar and invokes this Court's exclusive jurisdiction of the discipline of persons admitted to the practice of law under article V, section 15 of the Florida Constitution.
Except for certain technical corrections, the proposed amendments were published in The Florida Bar News on March 15, 1998. Comments have been filed by one respondent. The issue raised by the comments will be discussed briefly below, as will the principal proposed amendments of a substantive nature.

RULES 1-4.1 AND 2-3.3
The Florida Bar proposes that rule 1-4.1 of the Rules Regulating The Florida Bar be amended to eliminate the requirement of four representatives on the Board of Governors for nonresident members. Instead, the proposed rule would provide that there be at least one representative for each circuit and one for the nonresident members, with the representation of the respective circuits and nonresident members apportioned according to population. Coordinating with the proposed amendments to rule 1-4.1, the Bar proposes to amend rule 2-3.3, providing in proposed new subdivision 2-3.3(a) that the definition of "circuit" shall include "a hypothetical out-of-state judicial circuit with a circuit population equal to 50% of the number of members of The Florida Bar in good standing residing outside the state of Florida." The hypothetical out-of-state circuit with an attorney population equal to fifty percent of the nonresident Florida Bar membership is then to be an element of the apportionment formula for circuit representation on the Board of Governors described in revised rule 2-3.3(b).
We have considered the response filed by David P. Frankel, a nonresident member of The Florida Bar. Mr. Frankel argues that the proposed provisions on representation of nonresident members on the Board of Governors are inadequate and do not provide fair representation. Currently, rule 1-4.1 provides that there will be four governors representing the bar members residing outside the State of Florida. The amendment to rule 1-4.1 eliminates this provision, substituting a provision for at least one representative for each circuit and one from the nonresident members. The amendment to rule 2-3.3 treats the nonresident membership as a separate "circuit" for board representation purposes, with a population equal to fifty percent of the total number of nonresident members of the bar. In Florida Bar re Amendments to Rules Regulating The Florida Bar, 697 So.2d 115, 116-17 (Fla.1997), we approved an increase of the nonresident board representation to four members. The Florida Bar advises us that with the proposed amendments, the apportionment formula will maintain the current level of representation and allow for future reapportionment as member population ratios change. We therefore find that the proposed apportionment plan adequately provides for representation of nonresident members.

RULE 1-3.7(b)
The proposed amendments to rule 1-3.7(b) would change the provisions on payment of administrative and investigative costs in connection *1180 with nondisciplinary reinstatements to membership. Rule 1-3.7 addresses reinstatement to membership in a nondisciplinary context, that is, reinstatement by the Board of Governors following voluntary resignation from the bar, suspension for delinquency in the payment of dues, or suspension for noncompliance with continuing legal education requirements. These "nondisciplinary" suspensions from membership are to be distinguished from suspensions imposed in disciplinary proceedings. The reinstatement procedures following disciplinary suspensions are more elaborate and are set forth in rule 3-7.10. The proposed amendments to rule 1-3.7(b) would eliminate the $500 deposit for investigative costs currently imposed in certain cases, but increase the administrative fee from $50 to $150. The proposal also would allow the Executive Director of The Florida Bar, with the concurrence of the Executive Committee of the Board of Governors, to adjust the administrative fee in specific cases for good cause shown. We find that the proposed amendments would eliminate an unnecessary burden currently being imposed on some applicants, provide a justified increase in the administrative fee for reinstatement applications generally, and provide the Bar needed flexibility with regard to the costs of processing applications in specific cases. We therefore approve the proposed amendments.

RULES 3-7.6 AND 3-7.7
The Bar proposes that rule 3-7.6(l)(1) be amended to eliminate the requirement that referee hearings in disciplinary proceedings at which testimony is taken be reported and the reports be transcribed. Instead, the proposed rule would require that a court reporter attend and "record" the testimony, transcribing it only if directed to do so by the referee or by one of the parties. The party requesting the transcript is to bear the cost of transcription, subject to the possibility of assessment in connection with the judgment ultimately rendered in the case.
The Bar proposes that rule 3-7.7(c)(2) be amended to provide that the party seeking review of a referee's report must order transcripts of any hearings at which testimony was taken, file the transcripts with the court, and serve copies on the other party. Under the proposed amendment, failure to file and serve such transcripts will be cause for dismissal of the petition for review.
We find the proposed amendments to rules 3-7.6 and 3-7.7 to be appropriate and approve them.

RULE 4-1.5
In chapter 4 of the Rules Regulating The Florida Bar, the Rules of Professional Conduct, the Bar proposes certain changes to rule 4-1.5(f)(4)(B), which deals with attorneys' fees in cases of personal injury, property damage, death, or loss of services where the attorney's compensation is contingent on recovery of a judgment or settlement. The rule currently establishes certain limits on the percentage of a recovery that can be agreed upon as an attorney's fee in a contingent fee contract between a lawyer and a client. Percentage fees above these limits are considered presumptively excessive.
The proposed amendment to rule 4-1.5(f)(4)(B)(i)a., regarding cases settled for between $1 million and $2 million before an answer or demand for arbitration is filed or the time for filing same has expired, would reduce the percentage, of that portion of the recovery exceeding $1 million, above which a fee is presumed excessive from thirty percent to twenty percent. In cases settled before such time for more than $2 million, the proposed amendment would reduce the percentage of the portion over $2 million from twenty percent to fifteen percent.
The Bar further proposes amendments to rule 4-1.5(f)(4)(B)(i)c., governing cases where defendants admit liability at the time of filing their answers but demand trial on damages, where the recovery is between $1 million and $2 million. The proposed amendments increase the percentage of the portion over $1 million, above which a fee is presumed excessive, from twenty percent to thirty percent; and in such cases where the recovery exceeds $2 million, increases the percentage of the portion over $2 million, above which the fee is presumed excessive, from fifteen percent to twenty percent.
*1181 The Bar provides no explanation for either of these proposed changes to the rule. We are concerned about any proposed increases in the percentages of recovery. Accordingly, we decline to adopt the proposed amendments to subdivision (f)(4)(B) of rule 4-1.4 described above. We refer these proposed changes back to the Bar for further study and possible action by the Court at a later time.

CHAPTER 19
The Bar proposes a new Chapter 19, entitled "Center for Professionalism." The new rules would establish, within the administrative structure of The Florida Bar, a center to promote standards of professionalism. The proposed rules include provisions on the center's purposes, funding, staffing, and relationship to the Supreme Court Commission on Professionalism.
We applaud the Board of Governors and members of the Bar for the proposal to establish a Center for Professionalism. This proposal is responsive to the deeply felt concerns of many in the judiciary and the legal profession. It is in harmony with this Court's recent initiative in creating the Commission on Professionalism. The proposed rule appropriately contemplates coordination of efforts between the two entities. We approve the proposed rules.

OTHER SUBSTANTIVE AMENDMENTS
The other proposed amendments, which we approve, are summarized as follows. In Chapter 1 of the Rules Regulating The Florida Bar, rule 1-3.8 is changed to provide that the Florida Rules of Civil Procedure are applicable to proceedings involving inventories of attorneys' files.
In Chapter 2 (Bylaws), rule 2-3.2(d)(3) is amended to authorize Bar publications in electronic as well as print media; rule 2-3.2(d)(10) is amended to add "psychological problems" to the conditions for which programs of assistance to members are authorized; in rule 2-3.2(d), subdivisions (12) and (13) are added to authorize programs to enhance professionalism and provide information about the legal system; and, coordinating with the change to rule 2-3.2(d)(10), rule 2-9.11 is amended to provide that the program of assistance for addicted and chemically dependent members will also provide assistance to those suffering psychological problems affecting their professional performance.
In Chapter 3 (Rules of Discipline), rule 3-5.1(f) is amended to authorize permanent disbarment as a disciplinary sanction; rule 3-6.1 is amended to reorganize, clarify, and reform the terminology of the rules on the employment by law firms of suspended attorneys and disbarred and resigned former attorneys; rule 3-7.2(j), which requires notice to the Court of a member's disbarment or suspension in another jurisdiction, is amended to require the same type of notice in cases where an attorney has been the subject of a disciplinary resignation or surrender of license in another jurisdiction; rule 3-7.3 is amended to authorize Bar counsel to seek the concurrence of the grievance committee chair in the dismissal of a disciplinary matter with a letter of advice as described elsewhere in the rules; rule 3-7.6(n) is amended to change the fee charged by The Florida Bar for reproduction of documents from $1 per page to an amount to be determined annually by the Executive Director; and rule 3-7.9(e) is amended to provide that the grievance committee, staff counsel, and designated reviewer, when considering a proposed consent judgment, should decide whether to recommend revocation or restriction of a respondent's board certification.
In Chapter 4 (Rules of Professional Conduct), rule 4-1.5(f)(4)(B)(ii), providing for court approval of a fee contract where a client is unable to obtain counsel due to the restrictions imposed in the rule, is amended to change the reference to "the circuit court" to read "the court in which the matter would be filed" and to provide that if the court will not accept jurisdiction, relief may be sought in the circuit court where the cause of action arose; rule 4-1.5(f)(4)(D)(iii), on court approval of division of fees among two or more attorneys or law firms, is amended to make changes similar to those in rule 4-1.5(f)(4)(B)(ii) in referring to the courts in which relief may be sought; in paragraph 7 of the Statement of Client's Rights for Contingency *1182 Fees, advising of possible adverse consequences of losing a lawsuit, the words "costs and expenses" are added to "attorney's fees" as items the client might be required to pay to the other side; rule 4-3.4 is amended by adding new subdivisions (g) and (h), which prohibit bringing or threatening criminal or disciplinary charges solely to gain advantage in a civil matter; and rule 4-5.1 on the duties and responsibilities of partners and supervisors is amended to expand the language to refer to proprietors, shareholders, members, officers, directors, and managers of "authorized business entities" as elsewhere defined in the rules and to include within the scope of the rule supervising attorneys in business firms and government agencies.
In Chapter 6 (Legal Education and Specialization Programs), rule 6-3.5(b) and (c) on certification criteria are amended to refer to "substantial engagement" in the practice of law rather than "full-time" legal practice; and rule 6-3.5(c)(6) is amended to reorganize and clarify provisions on the peer review process and to add character, ethics, and professionalism to the criteria to be considered in evaluating certification applications.
In Chapter 7 (Clients' Security Fund), rule 7-2.3(c) is amended to state that neither a decision to pay a client's claim, nor a partial payment of a claim, shall vest in the applicant a legal right to receive payment of the claim.
In Chapter 10 (Unlicensed Practice of Law), rule 10-4.1(d) is amended to provide that circuit UPL committees can sit in panels of three, one of whom must be a nonlawyer; rule 10-7.1(c)(4), on injunctive relief proceedings before referees, is amended to allow memoranda of law instead of initial, response, and reply briefs to be filed in interlocutory review proceedings; and rules 10-7.1(d) and 10-7.2 are amended to allow memoranda of law instead of briefs in proceedings for review of referee reports on injunctive relief and contempt petitions.
In Chapter 17 (Authorized House Counsel), rule 17-1.5(a)(5) is amended to add disbarment or suspension by a court or agency of another state or by a federal court to the list of grounds for terminating authority to operate under the authorized house counsel rules.
The petition also proposes to change references to "annual dues" appearing throughout the rules to read "annual membership fees." The petition states that these changes are necessary to conform to certain requirements in the Internal Revenue Code affecting the deductibility of business expenses.
Other proposed changes are purely technical, clarifying, or corrective of terminology. For example, in rule 2-9.8, the name of the Law Office Management Advisory Service is changed to "Law Office Management Assistance Service." Rule 3-4.8 is deleted because it duplicates matter found in the Rules of Professional Conduct. There are other proposed changes of this kind that need not be discussed.
After careful consideration, we grant the petition to amend the rules except with respect to the provisions on presumptively excessive contingent fees in rule 4-1.5. We adopt the approved amendments as set forth in the appendix. New language is indicated by underscoring; deleted matter is indicated by struck-through type. These amendments shall take effect October 1, 1998.
It is so ordered.
HARDING, C.J., and OVERTON, SHAW, KOGAN, WELLS, ANSTEAD and PARIENTE, JJ., concur.

APPENDIX

RULE 1-3.2 MEMBERSHIP CLASSIFICATIONS
(a) Members in Good Standing. Members of The Florida Bar in good standing shall mean only those persons licensed to practice law in Florida who have paid annual membership fees or dues for the current year and who are not retired, resigned, delinquent, inactive, or suspended members. A practicing attorney of another state, in good standing, who has professional business in a court of record of this state may, upon motion, be permitted to practice for the purpose of such business upon such conditions as the *1183 court deems appropriate under the circumstances of the case.
(b) Conditionally Admitted Members. The Supreme Court of Florida may admit a person with a prior history of drug, alcohol, or psychological problems to membership in The Florida Bar and impose conditions of probation as the court deems appropriate upon that member. The period of probation shall be no longer than 3 years, or for such indefinite period of time as the court may deem appropriate by conditions in its order. The conditions may include, but not be limited to, participation in a rehabilitation program, periodic blood and urine analysis, periodic psychological examinations, or supervision by another member of The Florida Bar. The probation shall be monitored by The Florida Bar and the costs thereof shall be paid by the member on probation. A failure to observe the conditions of probation or a finding of probable cause as to conduct of the member committed during the period of probation may terminate the probation and subject the member to all available grievance procedures under the Rules of Discipline.
(c) Inactive Members. Inactive members of The Florida Bar shall mean only those members who have properly elected to be classified as inactive in the manner elsewhere provided.
Inactive members shall:
(1) pay annual dues membership fees as set forth in rule 1-7.3;
(2) be exempt from continuing legal education requirements;
(3) affirmatively represent their membership status as inactive members of The Florida Bar when any statement of Florida Bar membership is made;
(4) not hold themselves out as being able to practice law in Florida or render advice on matters of Florida law;
(5) not hold any position that requires the person to be a licensed Florida attorney;
(6) not be eligible for certification under the Florida certification plans;
(7) not vote in Florida Bar elections or be counted for purposes of apportionment of the board of governors;
(8) certify upon election of inactive status that they will comply with all applicable restrictions and limitations imposed on inactive members of The Florida Bar.
Failure of an inactive member to comply with all requirements thereof shall be cause for disciplinary action.
An inactive member may, at any time, apply for reinstatement to membership in good standing in the manner provided in rule 1-3.7.

RULE 1-3.5 RETIREMENT
Any member of The Florida Bar may retire from The Florida Bar upon petition to and approval of the board of governors. A retired member shall not practice law in this state except upon petition for reinstatement to and approval of the board of governors; the payment of all dues, membership fees, costs, or other amounts owed to The Florida Bar; and the completion of all outstanding continuing legal education or basic skills course requirements. A retired member shall be entitled to receive such other privileges as the board of governors may authorize.
A retired member shall remain subject to disciplinary action for acts committed before the effective date of retirement. Acts committed after retirement may be considered in evaluating the member's fitness to resume the practice of law in Florida as elsewhere stated in these Rules Regulating The Florida Bar.

RULE 1-3.6 DELINQUENT MEMBERS
Any person now or hereafter licensed to practice law in Florida who fails to pay dues membership fees or fails to comply with continuing legal education or basic skills course requirements shall be deemed a delinquent member. While occupying the status of a delinquent member, no person shall engage in the practice of law in Florida nor be entitled to any privileges and benefits accorded to members of The Florida Bar in good standing.

*1184 RULE 1-3.7 REINSTATEMENT TO MEMBERSHIP
(a) Eligibility for Reinstatement. Members who have retired, been delinquent in the payment of dues membership fees, or been delinquent in continuing legal education requirements for a period of time not in excess of 5 years are eligible for reinstatement under this rule. Time shall be calculated from the day of the retirement, dues membership fees delinquency, or continuing legal education delinquency.
Inactive members may also seek reinstatement under this rule.
(b) Petitions Required. A member seeking reinstatement must file a petition with the board of governors setting forth the reason for such resignation, retirement, or delinquency and showing good cause why the petition for reinstatement should be granted. The petition shall be on a form approved by the board of governors and the petitioner shall furnish such information on such form as the board of governors may require. The petition shall be accompanied by a nonrefundable reinstatement fee of $1 50, and payment of all arrearages , and, for persons who have retired or have been delinquent for a period of time longer than 3 years, a $500 cost deposit for investigation of the petition unless adjusted by the executive director with concurrence of the executive committee for good cause shown. Inactive members shall not be required to pay the reinstatement fee or cost deposit. No member shall be reinstated if, from the petition or from investigation conducted, the petitioner is not of good moral character and morally fit to practice law or if the member is delinquent in compliance with the continuing legal education or basic skills course requirements.
(c) Members Who Have Retired or Been Delinquent for 3 Years or Less. Members who have retired or been delinquent for 3 years or less may be reinstated by the executive director or the executive director may refer their petition to the board of governors.
(d) Members Who Have Retired or Been Delinquent for Less Than 5 Years, But More Than 3 Years. Members who have retired or been delinquent for less than 5 years, but more than 3 years, shall have completed 10 hours of continuing legal education courses for each year or portion thereof that the member had retired or was deemed delinquent. Final action of the board of governors denying a petition for reinstatement may be reviewed upon petition to the Supreme Court of Florida.
(e) Members Who Have Retired or Been Delinquent for 5 Years or More. Members who have retired or have been deemed delinquent for a period of 5 years or longer shall not be reinstated except upon application to and approval by the Florida Board of Bar Examiners.
(f) Members Delinquent 60 Days or Less. Reinstatement from dues membership fees delinquency accomplished within 60 days from the date of delinquency shall be deemed to relate back to the date before the delinquency. Any member reinstated within the 60-day period shall not be subject to disciplinary sanction for practicing law in Florida during that time.
(g) Inactive Members. Inactive members may be reinstated to membership in good standing by the board of governors by petition filed with the executive director, in the form and as provided in (b) above, except:
(1) If the member has been inactive for greater than 5 years, but has been authorized to and either actively practiced law in another jurisdiction for the entire period of time or held a position that requires a license as an attorney, the member shall be required to complete the Florida Law Update continuing legal education course as part of continuing legal education requirements.
(2) If the member has been inactive for greater than 5 years and has been authorized to but has not actively practiced law in another jurisdiction or held a position that requires a license as an attorney for the entire period of time, the member shall be required to complete the basic skills course requirement and the 30-hour continuing legal education requirement.
(3) An inactive member shall not be eligible for reinstatement until all applicable continuing *1185 legal education requirements have been completed and the remaining portion of dues of membership fees for members in good standing for the current fiscal year have been paid.

RULE 1-3.8 RIGHT TO INVENTORY
(a) Appointment; Grounds; Authority. Whenever an attorney is suspended, disbarred, becomes a delinquent member, abandons a practice, disappears, or dies, and no partner, personal representative, or other responsible party capable of conducting the attorney's affairs is known to exist, the appropriate circuit court, upon proper proof of the fact, may appoint an attorney or attorneys to inventory the files of the subject attorney (hereinafter referred to as "the subject attorney") and to take such action as seems indicated to protect the interests of clients of the subject attorney.
(b) Maintenance of Attorney-Client Confidences. Any attorney so appointed shall not disclose any information contained in files so inventoried without the consent of the client to whom such file relates except as necessary to carry out the order of the court that appointed the attorney to make the inventory.
(c) Status and Purpose of Inventory Attorney. Nothing herein creates an attorney and client, fiduciary, or other relationship between the inventory attorney and the subject attorney. The purpose of appointing an inventory attorney is to avoid prejudice to clients of the subject attorney and, as a secondary result, prevent or reduce claims against the subject attorney for such prejudice as may otherwise occur.
(d) Rules of Procedure. The Florida Rules of Civil Procedure are applicable to proceedings under this rule.

1-4. BOARD OF GOVERNORS

RULE 1-4.1 COMPOSITION OF BOARD OF GOVERNORS
The board of governors shall be the governing body of The Florida Bar. It shall have 52 members, 51 of whom shall be voting members, and shall consist of the president and the president-elect of The Florida Bar, president and president-elect (who shall vote only in the absence of the president) of the young lawyers division, 4 representatives of the members of The Florida Bar in good standing residing outside of the state of Florida, representatives elected by and from the members of The Florida Bar in good standing, in each judicial circuit, and 2 residents of the state of Florida who are not members of The Florida Bar. There shall be at least 1 or more such circuit representatives from each judicial circuit and at least 1 representative from among the members in good standing residing outside of the state of Florida, who all of whom shall be apportioned among and elected from the judicial circuits and the nonresident membership, on the basis of the number of members in good standing residing in each circuit and outside of the state. The formula for determining the number of additional circuit representatives apportioned to and elected from each judicial circuit and the nonresident membership, and all other matters concerning election and term of office for members of the board of governors, shall be prescribed in chapter 2.

1-7. DUES MEMBERSHIP FEES AND FISCAL CONTROL

RULE 1-7.3 DUES MEMBERSHIP FEES
(a) Dues Membership Fees Requirement. On or before July 1 of each year, every member of The Florida Bar, except those members who have retired, resigned, been disbarred, or been classified as inactive members pursuant to rule 3-7.13, shall pay annual dues membership fees to The Florida Bar in the amount set by the budget, provided that the board of governors shall not fix the dues membership fees at more than $190 per annum. At the time of the payment of dues membership fees every member of The Florida Bar shall file with the executive director a statement setting forth any information that may be required by the board of governors.
Dues Membership fees tendered to The Florida Bar shall not be accepted from any member who is delinquent in the payment of costs or restitution imposed against the member in a disciplinary proceeding. Costs *1186 shall be deemed delinquent unless paid within 30 days after the disciplinary decision becomes final unless such time is extended by the board of governors for good cause shown. Restitution shall be deemed delinquent unless accomplished in the manner and by the date provided in the disciplinary order or agreement.
(b) Prorated Dues Membership Fees. Persons admitted to The Florida Bar subsequent to July 1 of any fiscal year shall pay the annual dues membership fees for that fiscal year prorated on the basis of the number of full calendar months of the fiscal year remaining at the time of their admission.
Failure to pay prorated dues membership fees shall result in the amount of such prorated dues membership fees being added to the next annual dues membership fees billing to the member without penalty. The combined prorated and annual dues membership fees payment must thereafter be received by The Florida Bar on or before August 15, unless the member elects to pay by installment under this rule.
(c) Installment Payment of Dues Membership Fees. Members of The Florida Bar may elect to pay annual dues membership fees in three 3 equal installments as follows:
(1) in the second and third year of their admission to The Florida Bar; or
(2) if the member is employed by a federal, state, or local government in a non-elected position that requires the individual to maintain membership in good standing within The Florida Bar.
A member's notice of election to pay dues membership fees in installments under this rule and the first installment payment thereunder must be postmarked no later than August 15. The second and third installment payments must be postmarked no later than November 1 and February 1, respectively.
Second and/or third installment payments postmarked after their respective due date(s) shall be subject to a one-time late charge of $25 per fiscal year, which shall accompany the final payment unless adjusted by the executive director with concurrence of the executive committee for good cause shown.
The executive director shall send written notice by registered or certified mail to the last official bar address of each member whose dues membership fees and late fees have not been paid under this rule by February 1. Upon failure to pay dues membership fees and any late charges under this rule by March 15, unless adjusted by the executive director with concurrence of the executive committee for good cause shown, the member shall be a delinquent member.
Each member who elects to pay annual dues membership fees in installments under this rule may be charged an additional administrative fee to defray the costs of this activity as set by the Board of Governors.
(d) Election of Inactive Membership. A member in good standing may elect by August 15 of a fiscal year to be classified as an inactive member. Such election shall be made only by indication of such choice on the annual dues membership fees statement and payment of the prescribed annual dues membership fees. Failure to make the initial election by August 15 shall constitute a waiver of the member's right to the election until the next fiscal year. Once a member has properly elected to be classified as an inactive member, such classification shall continue from fiscal year to fiscal year until such time as the member is reinstated as a member in good standing as elsewhere provided in these rules. The election of inactive status shall be subject to the restrictions and limitations elsewhere provided.
Dues Membership fees for inactive members shall be set by the board of governors in an amount not to exceed $140 per annum.
(e) Late Payment of Dues Membership Fees. Payment of annual dues membership fees must be postmarked no later than August 15. Dues Membership fees payments postmarked after August 15 shall be accompanied by a late charge of $25 unless adjusted by the executive director with concurrence of the executive committee for good cause shown. The executive director shall send written notice by registered or certified mail to the last official bar address of each *1187 member whose dues membership fees have not been paid by August 15. Upon failure to pay dues membership fees and any late charges by September 30, unless adjusted by the executive director with concurrence of the executive committee for good cause shown, the member shall be a delinquent member.

BYLAW 2-3.2 POWERS
(a) Authority of Board; Supervision by Court. Subject to the continued direction and supervision by the Supreme Court of Florida, the board of governors may, by amendment to this chapter, take all necessary action to make nominations and appointments where authorized, support the Florida Bar Foundation, and create or abolish programs.
(b) Nomination and Appointment by Board. The board of governors may make nominations to or appointments to associations or other entities as required by the Rules Regulating The Florida Bar, this chapter, and any rules or policies adopted by the board of governors in accordance therewith or as required by law.
(c) Florida Bar Foundation. The board of governors may support the foundation known as The Florida Bar Foundation for charitable, scientific, literary, and educational purposes.
(d) Programs. The board of governors may establish, maintain, and supervise:
(1) a lawyer referral service;
(2) programs for providing continuing legal education for its members;
(3) the publication of a newspaper, a magazine, and other publications production of various print or electronic media for its members, affiliates, and the public;
(4) a program for providing information and advice to the courts and all other branches of government concerning current law and proposed or contemplated changes in the law;
(5) a program of cooperation with the faculty of accredited Florida law schools;
(6) a program for providing pre-paid legal services;
(7) a program for providing advice and educational information to members of the bar concerning the operation and management of law offices;
(8) programs for promoting and supporting the bar's public service obligations and activities, including, but not limited to, pro bono services support and law related education;
(9) programs for the development and provision of benefits and services to bar members, including, but not limited to, insurance benefits and association member discounts on goods and services;
(10) a program or funding for a program to provide for identification of and assistance to members of The Florida Bar who are chemically dependent or addicted suffer from impairment related to chemical dependency or psychological problems; and
(11) a program for providing enhanced opportunities and participation in the profession to minority members of the bar.;
(12) a program to enhance the levels of professionalism within the courts, law schools, and the legal profession; and
(13) programs for providing information or discussion about lawyers and the legal system.
BYLAW 2-3.3 FORMULA FOR APPORTIONMENT OF MEMBERS OF

BOARD OF GOVERNORS
(a) Nonresident Representation. As used in these bylaws, "judicial circuit" and "circuit" shall include a hypothetical out-of-state judicial circuit with a circuit population equal to 50% of the number of members of The Florida Bar in good standing residing outside of the State of Florida.
(b) Apportionment Formula. The formula for determining the number of representatives apportioned to and elected from each judicial circuit shall be as follows:
(a) Determination of Median Circuit Population. (1) Determination of Median Circuit Population. Determine the median number of members in good standing residing *1188 in the judicial circuits ("the median circuit population") by ranking the judicial circuits in order of the number of members in good standing residing in each circuit and determining the number of members in good standing residing in the judicial circuit that is ranked exactly midway between the circuit with the largest number of members and the circuit with the smallest number of members or, if there is an even number of circuits, calculating the average membership of the 2 circuits that are ranked midway between the circuit with the largest number of members and the circuit with the smallest number of members.
(b) Apportionment of Members Among the Judicial Circuits. (2) Apportionment of Representatives Among the Judicial Circuits. Apportion representatives among the judicial circuits by assigning to each judicial circuit the number of representatives equal to the quotient obtained by dividing the number of members in good standing residing in that circuit by the median circuit population and rounding to the nearest whole number.
(c) Determination of Deviation From Median Circuit Population. (3) Determination of Deviation From Median Circuit Population. Determine the relative deviation of each circuit's proportionate representation from the median circuit population by (1)(A) calculating the number of resident members per representative so apportioned, rounded to the nearest whole number, (2)(B) subtracting from that number the median circuit population, (3)(C) dividing the difference by the median circuit population, and (4)(D) converting the quotient so obtained to the equivalent percentile.
(d) Adjustment to Deviation From Median Circuit Population. (4) Adjustment to Deviation From Median Circuit Population. Determine whether each circuit's relative deviation from the median circuit population would be reduced by adding or subtracting 1 representative, and, if so, add or subtract 1 representative as indicated.
(e) Minimum Guaranteed Representatives. (5) Minimum Guaranteed Representatives. Assign 1 representative to each judicial circuit not otherwise qualifying for a representative under the calculations made in subdivisions (a)(1) and (b)(2).
(f) Reduction in Number of Representatives to Maintain Maximum Board Size. (6) Increase or Reduction in Number of Representatives to Achieve Required Board Size. If the total number of representatives assigned to the judicial circuits as a result of the steps set forth in subdivisions (a)(1) through (e)(5), when added to the number of officers and other representatives who are members of the board by virtue of the provisions of rule 1-4.1, would result in a board of more greater or fewer than 51 voting persons, increase or reduce the number of voting members of the board to exactly 51 voting persons by (1)(A) determining which judicial circuit among those to which more than 1 representative has been apportioned would have the smallest relative deviation from the median circuit population after the gain or loss of 1 representative, (2)(B) adding or subtracting 1 representative from that circuit, as indicated, and (3)(C) repeating those 2 steps as necessary until the total number of voting board members is increased or reduced to exactly 51.

BYLAW 2-6.8 DUES MEMBERSHIP FEES
The dues of membership fees for members of The Florida Bar shall be included in the proposed budget filed by The Florida Bar in the Supreme Court of Florida.

BYLAW 2-9.3 LEGISLATIVE POLICIES
(a) Adoption of Rules of Procedure and Legislative Positions. The board of governors shall adopt and may repeal or amend rules of procedure governing the legislative activities of The Florida Bar in the same manner as provided in bylaw 2-9.2; provided, however, that the adoption of any legislative position shall require the affirmative vote of two-thirds of those present at any regular meeting of the board of governors or two-thirds of the executive committee or by the president, as provided in the rules of procedure governing legislative activities.
(b) Publication of Legislative Positions. The Florida Bar shall publish notice of adoption of legislative positions in The Florida *1189 Bar News, in the issue immediately following the board meeting at which the positions were adopted.
(c) Objection to Legislative Positions of The Florida Bar.
(1) Any member in good standing of The Florida Bar may, within 45 days of the date of publication of notice of adoption of a legislative position, file with the executive director a written objection to a particular position on a legislative issue. The identity of an objecting member shall be confidential unless made public by The Florida Bar or any arbitration panel constituted under these rules upon specific request or waiver of the objecting member. Failure to object within this time period shall constitute a waiver of any right to object to the particular legislative issue.
(2) After a written objection has been received, the executive director shall promptly determine the pro rata amount of the objecting member's dues membership fees at issue and such amount shall be placed in escrow pending determination of the merits of the objection. The escrow figure shall be independently verified by a certified public accountant.
(3) Upon the deadline for receipt of written objections, the board of governors shall have 45 days in which to decide whether to give a pro rata refund to the objecting member(s) or to refer the action to arbitration.
(4) In the event the board of governors orders a refund, the objecting member's right to the refund shall immediately vest although the pro rata amount of the objecting member's dues membership fees at issue shall remain in escrow for the duration of the fiscal year and until the conclusion of The Florida Bar's annual audit as provided in bylaw 2-6.16, which shall include final independent verification of the appropriate refund payable. The Florida Bar shall thereafter pay the refund within 30 days of independent verification of the amount of refund, together with interest calculated at the statutory rate of interest on judgments as of the date the objecting member's dues membership fees at issue were received by The Florida Bar, for the period commencing with such date of receipt of the dues membership fees and ending on the date of payment of the refund by The Florida Bar.
(d) Composition of Arbitration Panel. Objections to legislative positions of The Florida Bar may be referred by the board of governors to an arbitration panel comprised of 3 members of The Florida Bar, to be constituted as soon as practicable following the decision by the board of governors that a matter shall be referred to arbitration.
The objecting member shall be allowed to choose 1 member of the arbitration panel, The Florida Bar shall appoint the second panel member, and those 2 members shall choose a third member of the panel who shall serve as chair. In the event the 2 members of the panel are unable to agree on a third member, the chief judge of the Second Judicial Circuit of Florida shall appoint the third member of the panel.
(e) Procedures for Arbitration Panel.
(1) Upon a decision by the board of governors that the matter shall be referred to arbitration, The Florida Bar shall promptly prepare a written response to the objection and serve a copy on the objecting member. Such response and objection shall be forwarded to the arbitration panel as soon as the panel is properly constituted. Venue for any arbitration proceedings conducted pursuant to this rule shall be in Leon County, Florida; however, for the convenience of the parties or witnesses or in the interest of justice, the proceedings may be transferred upon a majority vote of the arbitration panel. The chair of the arbitration panel shall determine the time, date, and place of any proceeding and shall provide notice thereof to all parties. The arbitration panel shall thereafter confer and decide whether The Florida Bar proved by the greater weight of evidence that the legislative matters at issue are constitutionally appropriate for funding from mandatory Florida Bar dues membership fees.
(2) The scope of the arbitration panel's review shall be to determine solely whether the legislative matters at issue are within those acceptable activities for which compulsory *1190 dues membership fees may be used under applicable constitutional law.
(3) The proceedings of the arbitration panel shall be informal in nature and shall not be bound by the rules of evidence. If requested by an objecting member who is a party to the proceedings, that party and counsel, and any witnesses, may participate telephonically, the expense of which shall be advanced by the requesting party. The decision of the arbitration panel shall be binding as to the objecting member and The Florida Bar. If the arbitration panel concludes the legislative matters at issue are appropriately funded from mandatory dues membership fees, there shall be no refund and The Florida Bar shall be free to expend the objecting member's pro rata amount of dues membership fees held in escrow. If the arbitration panel determines the legislative matters at issue are inappropriately funded from mandatory dues membership fees, the panel shall order a refund of the pro rata amount of dues membership fees to the objecting member.
(4) The arbitration panel shall thereafter render a final written report to the objecting member and the board of governors within 45 days of its constitution.
(5) In the event the arbitration panel orders a refund, the objecting member's right to the refund shall immediately vest although the pro rata amount of the objecting member's dues membership fees at issue shall remain in escrow until paid. Within 30 days of independent verification of the amount of refund, The Florida Bar shall provide such refund together with interest calculated at the statutory rate of interest on judgments as of the date the objecting member's dues membership fees at issue were received by The Florida Bar, for the period commencing with such date of receipt of the dues membership fees and ending on the date of payment of the refund by The Florida Bar.
(6) Each arbitrator shall be compensated at an hourly rate equal to that of a circuit court judge based on services performed as an arbitrator pursuant to this rule.
(7) The arbitration panel shall tax all legal costs and charges of any arbitration proceeding conducted pursuant to this rule, to include arbitrator expenses and compensation, in favor of the prevailing party and against the nonprevailing party. When there is more than one party on one or both sides of an action, the arbitration panel shall tax such costs and charges against nonprevailing parties as it may deem equitable and fair.
(8) Payment by The Florida Bar of the costs of any arbitration proceeding conducted pursuant to this bylaw, net of costs taxed and collected, shall not be considered to be an expense for legislative activities, in calculating dues the amount of membership fees refundsed pursuant to this bylaw.

BYLAW 2-9.8 LAW OFFICE MANAGEMENT ADVISORY ASSISTANCE SERVICE
The board of governors hereby creates the law office management advisory assistance service and shall adopt standing board policies, as provided in bylaw 2-9.2, that shall govern the operation of the service.

BYLAW 2-9.11 ASSISTANCE TO MEMBERS ADDICTED TO OR DEPENDENT UPON SUFFERING FROM IMPAIRMENT RELATED TO CHEMICALS DEPENDENCY OR PSYCHOLOGICAL PROBLEMS
The Florida Bar shall create or fund a program for the identification of its members who are addicted to or dependent upon chemicals suffer from impairment related to chemical dependency or psychological problems which affect their professional performance or practice of law, and the assistance of those members in overcoming such addictions or dependencies y or problems.

RULE 3-4.8 RESPONDENT'S OBLIGATION TO RESPOND
Any member of The Florida Bar who is the subject of an investigation under the Rules Regulating The Florida Bar shall respond, in writing, to all investigative inquiries made by bar counsel or grievance committees, and as elsewhere required in the Rules Regulating The Florida Bar. The required response may invoke any proper privilege, *1191 immunity, or disability available to the member.

3-5. TYPES OF DISCIPLINE

RULE 3-5.1 GENERALLY
A judgment entered, finding a member of The Florida Bar guilty of misconduct, shall include one or more of the following disciplinary measures:
(a) Admonishments. A Supreme Court of Florida order finding minor misconduct and adjudging an admonishment may direct the respondent to appear before the Supreme Court of Florida, the board of governors, grievance committee, or the referee for administration of the admonishment. A grievance committee report and finding of minor misconduct or the board of governors, upon review of such report, may direct the respondent to appear before the board of governors or the grievance committee for administration of the admonishment. A memorandum of administration of an admonishment shall thereafter be made a part of the record of the proceeding.
(b) Minor Misconduct. Minor misconduct is the only type of misconduct for which an admonishment is an appropriate disciplinary sanction.
(1) Criteria. In the absence of unusual circumstances misconduct shall not be regarded as minor if any of the following conditions exist:
(A) the misconduct involves misappropriation of a client's funds or property;
(B) the misconduct resulted in or is likely to result in actual prejudice (loss of money, legal rights, or valuable property rights) to a client or other person;
(C) the respondent has been publicly disciplined in the past 3 years;
(D) the misconduct involved is of the same nature as misconduct for which the respondent has been disciplined in the past 5 years;
(E) the misconduct includes dishonesty, misrepresentation, deceit, or fraud on the part of the respondent; or
(F) the misconduct constitutes the commission of a felony under applicable law.
(2) Discretion of Grievance Committee. Despite the presence of 1 or more of the criteria described in subdivision (1) above, a grievance committee may recommend an admonishment for minor misconduct or diversion to a practice and professionalism enhancement program when unusual circumstances are present. When the grievance committee recommends an admonishment for minor misconduct or diversion to a practice and professionalism enhancement program under such circumstances, its report shall contain a detailed explanation of the circumstances giving rise to the committee's recommendation.
(3) Recommendation of Minor Misconduct. If a grievance committee finds the respondent guilty of minor misconduct or if the respondent shall admit guilt of minor misconduct and the committee concurs, the grievance committee shall file its report recommending an admonishment, recommending the manner of administration, and for the taxing of costs against the respondent. The report recommending an admonishment shall be forwarded to staff counsel and the designated reviewer for review. If staff counsel does not return the report to the grievance committee to remedy a defect therein, or if the report is not referred to the disciplinary review committee by the designated reviewer (as provided in rule 3-7.5(b)), the report shall then be served on the respondent by bar counsel. The report and finding of minor misconduct shall become final unless rejected by the respondent within 15 days after service of the report. If rejected by the respondent, the report shall be referred to bar counsel and referee for trial on complaint of minor misconduct to be prepared by bar counsel as in the case of a finding of probable cause. If the report of minor misconduct is not rejected by the respondent, notice of the finding of minor misconduct shall be given, in writing, to the complainant.
(4) Rejection of Minor Misconduct Reports. The rejection by the board of governors of a grievance committee report of minor misconduct, without dismissal of the case, or remand to the grievance committee, shall *1192 be deemed a finding of probable cause. The rejection of such report by a respondent shall be deemed a finding of probable cause for minor misconduct. Upon trial before a referee following rejection by a respondent of a report of minor misconduct, the referee may recommend any discipline authorized under these rules.
(5) Admission of Minor Misconduct. Within 15 days after a finding of probable cause by a grievance committee, a respondent may tender a written admission of minor misconduct to bar counsel or the grievance committee. An admission of minor misconduct may be conditioned upon acceptance by the grievance committee, but the respondent may not condition the admission of minor misconduct upon the method of administration of the admonishment or upon nonpayment of costs incurred in the proceedings. Such an admission may be tendered after a finding of probable cause (but before the filing of a complaint) only if such an admission has not been previously tendered. If the admission is tendered after a finding of probable cause, the grievance committee may consider such admission without further evidentiary hearing and may either reject the admission, thereby affirming its prior action, or accept the admission and issue its report of minor misconduct. If a respondent's admission is accepted by the grievance committee, the respondent may not thereafter reject a report of the committee recommending an admonishment for minor misconduct. If the admission of minor misconduct is rejected, such admission shall not be considered or used against the respondent in subsequent proceedings.
(c) Probation. The respondent may be placed on probation for a stated period of time of not less than 6 months nor more than 3 years or for an indefinite period determined by conditions stated in the order. The judgment shall state the conditions of the probation, which may include but are not limited to the following: completion of a practice and professionalism enhancement program as provided elsewhere in these rules; supervision of all or part of the respondent's work by a member of The Florida Bar; the making of reports to a designated agency; the satisfactory completion of a course of study or a paper on legal ethics approved by the Supreme Court of Florida; such supervision over fees and trust accounts as the court may direct. The respondent will also reimburse the bar for the costs of supervision. Failure to observe the conditions of the probation or a finding of probable cause as to conduct of the respondent committed during the period of probation shall terminate the probation. In such event, even though such finding of probable cause shall be made after the expiration of the period of probation, the judgment shall be reconsidered and an appropriate judgment shall be entered. On termination of probation for failure to observe the conditions of probation or on a finding of probable cause for misconduct committed during the period of probation, the attorney may be punished for contempt or suspended from the practice of law on petition by The Florida Bar, and any such suspension shall continue until the respondent may be reinstated to the practice of law as provided elsewhere in these rules.
(d) Public Reprimand. A public reprimand shall be administered in the manner prescribed in the judgment but all such reprimands shall be reported in the Southern Reporter. Due notice shall be given to the respondent of any proceeding set to administer the reprimand. The respondent shall appear personally before the Supreme Court of Florida, the board of governors, any judge designated to administer the reprimand, or the referee, if required, and such appearance shall be made a part of the record of the proceeding.
(e) Suspension. The respondent may be suspended from the practice of law for a definite period of time or an indefinite period thereafter to be determined by the conditions imposed by the judgment. During such suspension the respondent shall continue to be a member of The Florida Bar but without the privilege of practicing, and, upon the expiration of the suspension period and the satisfaction of all conditions accompanying the suspension, the respondent shall become eligible to all of the privileges of members in The Florida Bar. A suspension of 90 days or *1193 less shall not require proof of rehabilitation or passage of the Florida bar examination. A suspension of more than 90 days shall require proof of rehabilitation and may require passage of all or part of the Florida bar examination. No suspension shall be ordered for a specific period of time in excess of 3 years.
(f) Disbarment. A judgment of disbarment terminates the respondent's status as a member of the bar. Permanent disbarment shall preclude readmission. A former member who has not been permanently disbarred may only be admitted again upon full compliance with the rules and regulations governing admission to the bar. Except as might be otherwise provided in these rules, no application for admission may be tendered within 5 years after the date of disbarment or such longer period as the court might determine in the disbarment order.
(g) Notice to Clients. Upon service on the respondent of an order of disbarment, suspension, resignation for cause, emergency suspension, or placement on the inactive list, the respondent shall, unless this requirement is waived or modified in the court's order, forthwith furnish a copy of the order to all of the respondent's clients with matters pending in the respondent's practice, and within 30 days after service of the order the respondent shall furnish staff counsel of The Florida Bar with a sworn affidavit listing the names and addresses of all clients who have been furnished copies of the order.
(h) Forfeiture of Fees. An order of the Supreme Court of Florida or a report of minor misconduct adjudicating a respondent guilty of entering into, charging, or collecting a fee prohibited by the Rules Regulating The Florida Bar may order the respondent to forfeit the fee or any part thereof. In the case of a clearly excessive fee, the excessive amount of the fee may be ordered returned to the client, and a fee otherwise prohibited by the Rules Regulating The Florida Bar may be ordered forfeited to The Florida Bar Clients' Security Fund and disbursed in accordance with its rules and regulations.
(i) Restitution. In addition to any of the foregoing disciplinary sanctions and any disciplinary sanctions authorized elsewhere in these rules, the respondent may be ordered or agree to pay restitution to a complainant or other person if the disciplinary order finds that the respondent has received a clearly excessive, illegal, or prohibited fee or that the respondent has converted trust funds or property. In such instances the amount of restitution shall be specifically set forth in the disciplinary order or agreement and shall not exceed the amount by which a fee is clearly excessive, in the case of a prohibited or illegal fee shall not exceed the amount of such fee, or in the case of conversion shall not exceed the amount of the conversion established in disciplinary proceedings. The disciplinary order or agreement shall also state to whom restitution shall be made and the date by which it shall be completed. Failure to comply with the order or agreement shall not preclude further proceedings under these rules.
(j) Disciplinary Resignation. A respondent may be allowed to resign membership in The Florida Bar in lieu of defending against allegations of disciplinary violations. If accepted by the Supreme Court of Florida, a disciplinary resignation terminates the respondent's status as a member of the bar. A former member whose disciplinary resignation has been accepted may only be admitted again upon full compliance with the rules and regulations governing admission to the bar. Except as otherwise provided in these rules, no application for admission may be tendered within 3 years after the date of the order of the Supreme Court of Florida that accepted the disciplinary resignation or such additional time as the respondent may have stated in the petition for disciplinary resignation. A petition that states that disciplinary resignation is without leave to apply for readmission shall preclude readmission to the bar.

3-6. EMPLOYMENT OF CERTAIN DISCIPLINED ATTORNEYS OR FORMER ATTORNEYS

RULE 3-6.1 GENERALLY
When attorneys have been placed on the inactive list, suspended, disbarred, or allowed resignation pursuant to rule 3-7.12 by order *1194 of this court, they are ineligible to practice law until reinstated or readmitted. However, this shall not preclude a An lawyer, law firm, or professional association authorized business entity (as defined elsewhere in these rules) from may employing the suspended, disbarred or resigned individual individuals subject to this rule to perform such services only as may ethically be performed by other lay persons employed in attorneys' offices by authorized business entities under the following conditions:
(a) Individuals Subject to This Rule. Individuals subject to this rule are suspended attorneys and former attorneys who have been disbarred or whose disciplinary resignations have been allowed.
(b) Definition of Employment. An individual subject to this rule shall be considered as an employee of an authorized business entity if the individual is a salaried or hourly employee or volunteer worker for an authorized business entity, or an independent contractor providing services to an authorized business entity.
(ac) Notice of Employment. Notice of employment along with a full job description will be provided to staff counsel b Before employment commences the employer shall provide The Florida Bar with a notice of employment and a detailed description of the intended services to be provided by the employee.
(d) Client Contact. No employee shall have direct contact with any client. Direct client contact does not include the participation of the employee as an observer in any meeting, hearing, or interaction between a supervising attorney and a client.
(be) Reports by Employee and Employer. Information reports verified by tThe employee and employer will be submitted to staff counsel quarterly shall submit sworn information reports, quarterly based on a calendar year, to The Florida Bar. Such reports shall contain a include statements by the employing lawyer certifying that no aspect of the employee's work for the period has involved the unlicensed practice of law, that the employee has had no direct client contact, and that the employee did not receive, disburse, or otherwise handle trust funds or property.
(c) Client Contact. No suspended, resigned, or disbarred attorney shall have direct contact with any client or receive, disburse, or otherwise handle trust funds or property.

RULE 3-7.2 PROCEDURES UPON CRIMINAL OR PROFESSIONAL

MISCONDUCT; DISCIPLINE UPON DETERMINATION OR JUDGMENT OF GUILT OF CRIMINAL MISCONDUCT
(a) Definitions.
(1) Judgment of Guilt. For the purposes of these rules, "judgment of guilt" shall include only those cases in which the trial court in the criminal proceeding enters an order adjudicating the respondent guilty of the offense(s) charged.
(2) Determination of Guilt. For the purposes of these rules, "determination of guilt" shall include only those cases in which the trial court in the criminal proceeding enters an order withholding adjudication of the respondent's guilt of the offense(s) charged.
(3) Convicted Attorney. For the purposes of these rules, "convicted attorney" shall mean an attorney who has had either a determination or judgment of guilt entered by the trial court in the criminal proceeding.
(b) Determination or Judgment of Guilt. Determination or judgment of guilt of a member of The Florida Bar by a court of competent jurisdiction upon trial of or plea to any crime or offense that is a felony under the laws of this state, or under the laws under which any other court making such determination or entering such judgment exercises its jurisdiction, shall be conclusive proof of guilt of the criminal offense(s) charged for the purposes of these rules.
(c) Notice of Determination or Judgment of Guilt. Upon the entry of a determination or judgment of guilt against a member of The Florida Bar by a court of competent jurisdiction upon trial of or plea to any offense that is a felony under the *1195 laws applicable to such court, such convicted attorney shall within 30 days of such determination or judgment notify the executive director of The Florida Bar of such determination or judgment. Notice shall include a copy of the order(s) whereby such determination or judgment was entered.
(d) Notice of Determination or Judgment of Guilt by Courts of the State of Florida. If any such determination or judgment is entered by a court of the State of Florida, the judge or clerk thereof shall transmit to the Supreme Court of Florida and the executive director of The Florida Bar a certified copy of the order(s) whereby the determination or judgment was entered.
(e) Suspension by Judgment of Guilt (Felonies). Upon receiving notice that a member of the bar has been determined or adjudicated guilty of a felony, branch staff counsel will file a "Notice of Determination or Judgment of Guilt" in the Supreme Court of Florida. A copy of the judgment shall be attached to the notice. Upon the filing with the Supreme Court of Florida by The Florida Bar and service upon the respondent of a notice of determination or judgment of guilt for offenses that are felonies under applicable law, the respondent shall stand suspended as a member of The Florida Bar on the eleventh day after filing of the notice of determination or judgment of guilt unless the respondent shall, on or before the tenth day after filing of such notice, file a petition to terminate or modify such suspension.
(f) Petition to Modify or Terminate Suspension.
(1) At any time after the filing of a notice of determination or judgment of guilt, the respondent may file a petition with the Supreme Court of Florida to modify or terminate such suspension and shall serve a copy thereof upon the executive director.
(2) If such petition is filed on or before the tenth day following the filing of the notice, the suspension will be deferred until entry of an order on the petition.
(3) If such petition is filed after the tenth day following the filing of the notice of judgment of guilt, the suspension shall remain in effect pending disposition of the petition. Modification or termination of the suspension shall be granted only upon a showing of good cause.
(g) Response to Petition to Modify or Terminate Automatic Suspension. The Florida Bar shall be allowed 20 days from the filing of a petition to modify or terminate automatic suspension to respond to the same. Staff counsel will oppose all petitions to modify or withhold an automatic suspension on a notice of determination or judgment of guilt unless the designated reviewer recommends and the executive committee concurs in not opposing such a petition.
(h) Term of Suspension.
(1) Maximum Term of Suspension. Unless the Supreme Court of Florida permits an earlier application for reinstatement, the suspension imposed on the determination or judgment of guilt shall remain in effect for 3 years and thereafter until civil rights have been restored and until the respondent is reinstated under rule 3-7.10 hereof.
(2) Continuation During Appeal. A final termination of the criminal cause resulting in the affirmance of a determination or judgment of guilt shall continue the suspension until expiration of all periods for appeal and rehearing.
(3) Continuation of Suspension Until Final Disposition. If an appeal is taken by the respondent from the determination or judgment of the trial court in the criminal proceeding, and on review the cause is remanded for further proceedings, the suspension shall remain in effect until the final disposition of the criminal cause unless modified or terminated by the Supreme Court of Florida as elsewhere provided.
(4) Termination of Suspension. A final disposition of the criminal cause resulting in acquittal will terminate the suspension.
(i) Separate Disciplinary Action.
(1) Initiation of Action. The Florida Bar may, at any time, initiate separate disciplinary action against the respondent.
(2) Conclusive Proof of Probable Cause. A determination or judgment of guilt, where the offense is a felony under applicable law, *1196 shall constitute conclusive proof of probable cause and The Florida Bar may file a complaint with the Supreme Court of Florida, or proceed under rule 3-7.9, without there first having been a separate finding of probable cause.
(3) Determination or Judgment of Guilt as Evidence. A determination or judgment of guilt, whether for charges that are felony or misdemeanor in nature, shall be admissible in disciplinary proceedings under these rules, and in those cases where the underlying criminal charges constitute felony charges, determinations or judgments of guilt shall, for purposes of these rules, constitute conclusive proof of the criminal offense(s) charged. The failure of a trial court to adjudicate the convicted attorney guilty of the offense(s) charged shall be considered as a matter of mitigation only.
(j) Professional Misconduct in Foreign Jurisdiction.
(1) Notice of Discipline by a Foreign Jurisdiction. A member of The Florida Bar who has submitted a disciplinary resignation or otherwise surrendered a license to practice law in lieu of disciplinary sanction, or has been disbarred or suspended from the practice of law by a court or other authorized disciplinary agency of another state or by a federal court shall within 30 days after the effective date of disbarment or suspension file with the Supreme Court of Florida a copy of the order or judgment effecting such disbarment or suspension.
(2) Adjudication or Discipline by a Foreign Jurisdiction. In cases of a final adjudication by a court or other authorized disciplinary agency of another jurisdiction, such adjudication of misconduct shall be sufficient basis for the filing of a complaint by The Florida Bar and assignment for hearing before a referee without a finding of probable cause under these rules.

RULE 3-7.3 REVIEW OF INQUIRIES, COMPLAINT PROCESSING, AND INITIAL INVESTIGATORY PROCEDURES
(a) Screening of Inquiries. Prior to opening a disciplinary file, bar counsel shall review the inquiry made and determine whether the alleged conduct, if proven, would constitute a violation of the Rules Regulating The Florida Bar warranting the imposition of discipline. If bar counsel determines that the facts allege a fee dispute which, if proven, would probably not constitute a clear violation under 4-1.5 of the Rules Regulating The Florida Bar, bar counsel may, with the consent of the complainant and respondent, refer the matter to the appropriate circuit arbitration committee for arbitration under chapter 14. If bar counsel determines that the facts, if proven, would not constitute a violation of the Rules Regulating The Florida Bar warranting the imposition of discipline, bar counsel may decline to pursue the inquiry. A decision by bar counsel not to pursue an inquiry shall not preclude further action or review under the Rules Regulating The Florida Bar. The complainant and respondent shall be notified of a decision not to pursue an inquiry and shall be given the reasons therefor.
(b) Complaint Processing and Bar Counsel Investigation. If bar counsel decides to pursue an inquiry, a disciplinary file shall be opened and the inquiry shall be considered as a complaint, if the form requirement of subdivision (c) is met. Bar counsel shall investigate the allegations contained in the complaint.
(c) Form for Complaints. All complaints, except those initiated by The Florida Bar, shall be in writing and under oath. The complaint shall contain a statement providing:
Under penalty of perjury, I declare the foregoing facts are true, correct, and complete.
(d) Dismissal of Disciplinary Cases. Bar counsel may dismiss disciplinary cases if, after complete investigation, bar counsel determines that the facts show that the respondent did not violate the Rules Regulating The Florida Bar. Dismissal by bar counsel shall not preclude further action or review under the Rules Regulating The Florida Bar. Nothing in these rules shall preclude bar counsel from obtaining the concurrence of the grievance committee chair on the dismissal of a case or on dismissal of the case *1197 with issuance of a letter of advice as described elsewhere in these Rules Regulating The Florida Bar. If a disciplinary case is dismissed, the complainant shall be notified of the dismissal and shall be given the reasons therefor.
(e) Diversion to Practice and Professionalism Enhancement Programs. Bar counsel may recommend diversion of disciplinary cases as provided elsewhere in these rules if, after complete investigation, bar counsel determines that the facts show that the respondent's conduct did not constitute disciplinary violations more severe than minor misconduct.
(f) Referral to Grievance Committees. Bar counsel may refer disciplinary cases to a grievance committee for its further investigation or action as authorized elsewhere in these rules. Bar counsel may recommend specific action on a case referred to a grievance committee.
(g) Information Concerning Closed Inquiries and Complaints Dismissed by Staff. When bar counsel does not pursue an inquiry or dismisses a disciplinary case, such action shall be deemed a finding of no probable cause for further disciplinary proceedings and the matter shall become public information.

RULE 3-7.6 PROCEDURES BEFORE A REFEREE
(a) Referees. The chief justice shall have the power to appoint referees to try disciplinary cases and to delegate to a chief judge of a judicial circuit the power to appoint referees for duty in the chief judge's circuit. Such appointees shall ordinarily be active county or circuit judges, but the chief justice may appoint retired judges.
(b) Trial by Referee. When a finding has been made by a grievance committee or by the board that there is cause to believe that a member of The Florida Bar is guilty of misconduct justifying disciplinary action, and the formal complaint based on such finding of probable cause has been assigned by the chief justice for trial before a referee, the proceeding thereafter shall be an adversary proceeding that shall be conducted as hereinafter set forth.
(c) Venue. The trial shall be held in the county in which an alleged offense occurred or in the county where the respondent resides or practices law or last practiced law in Florida, whichever shall be designated by the Supreme Court of Florida; provided, however, that if the respondent is not a resident of Florida and if the alleged offense is not committed in Florida, the trial shall be held in a county designated by the chief justice.
(d) Style of Proceedings. All proceedings instituted by The Florida Bar shall be styled "The Florida Bar, Complainant, v. (name of respondent), Respondent," and "In The Supreme Court of Florida (Before a Referee)."
(e) Nature of Proceedings.
(1) Administrative in Character. A disciplinary proceeding is neither civil nor criminal but is a quasi-judicial administrative proceeding. The Florida Rules of Civil Procedure apply except as otherwise provided in this rule.
(2) Discovery. Discovery shall be available to the parties in accordance with the Florida Rules of Civil Procedure.
(f) Bar Counsel. Bar counsel shall make such investigation as is necessary and shall prepare and prosecute with utmost diligence any case assigned. Assistant bar counsel shall serve under the general supervision of bar counsel.
(g) Pleadings. Pleadings may be informal and shall comply with the following requirements:
(1) Complaint; Consolidation and Severance.
(A) Filing. Staff counsel shall prepare the complaint and file the same in the Supreme Court of Florida.
(B) Content. The complaint shall set forth the particular act or acts of conduct for which the attorney is sought to be disciplined.
(C) Joinder of Charges and Respondents; Severance. A complaint may embrace any number of charges against one 1 *1198 or more respondents, and charges may be against any one 1 or any number of respondents; but a severance may be granted by the referee when the ends of justice require it.
(2) Answer and Motion. The respondent shall answer the complaint and, as a part thereof or by separate motion, may challenge only the sufficiency of the complaint and the jurisdiction of the forum. All other defenses shall be incorporated in the respondent's answer. The answer may invoke any proper privilege, immunity, or disability available to the respondent. All pleadings of the respondent must be filed within 20 days of service of a copy of the complaint.
(3) Reply. If the respondent's answer shall contain any new matter or affirmative defense, a reply thereto may be filed within 10 days of the date of service of a copy upon bar counsel, but failure to file such a reply shall not prejudice The Florida Bar. All affirmative allegations in the respondent's answer shall be considered as denied by The Florida Bar.
(4) Disposition of Motions. Hearings upon motions may be deferred until the final hearing, and, whenever heard, rulings thereon may be reserved until termination of the final hearing.
(5) Filing and Service of Pleadings.
(A) Prior to Appointment of Referee. Any pleadings filed in a case prior to appointment of a referee shall be filed with the Supreme Court of Florida and shall bear a certificate of service showing parties upon whom service of copies has been made. On appointment of referee, the Supreme Court of Florida shall notify the parties of such appointment and forward all pleadings filed with the court to the referee for action.
(B) After Appointment of Referee. All pleadings, motions, notices, and orders filed after appointment of a referee shall be filed with the referee and shall bear a certificate of service showing service of a copy on the staff counsel of The Florida Bar and on all interested parties to the proceedings.
(6) Amendment. Pleadings may be amended by order of the referee, and a reasonable time shall be given within which to respond thereto.
(7) Expediting the Trial. If it shall be made to appear that the date of final hearing should be expedited in the public interest, the referee may, in the referee's discretion, shorten the time for filing pleadings and the notice requirements as provided in this rule.
(8) Disqualification of Referee. Upon motion of either party, a referee may be disqualified from service in the same manner and to the same extent that a trial judge may be disqualified under existing law from acting in a judicial capacity. In the event of disqualification, the chief justice shall appoint a successor.
(h) Notice of Final Hearing. The cause may be set down for trial by either party or the referee upon not less than 10 days' notice. The trial shall be held as soon as possible following the expiration of 10 days from the filing of the respondent's answer, or if no answer is filed, then from the date when such answer is due.
(i) The Respondent. Unless the respondent claims a privilege or right properly available under applicable federal or state law, the respondent may be called as a witness by The Florida Bar to make specific and complete disclosure of all matters material to the issues. When the respondent is subpoenaed to appear and give testimony or to produce books, papers, or documents and refuses to answer or to produce such books, papers, or documents, or, having been duly sworn to testify, refuses to answer any proper question, the respondent may be cited for contempt of the court.
(j) Complaining Witness. The complaining witness shall have no rights other than those of any other witness; the complaining witness has no right to be present during a hearing or trial but may be called upon to testify and produce evidence as any other witness. Neither unwillingness nor neglect of the complaining witness to cooperate, nor settlement, compromise, or restitution will excuse failure to complete any trial.
(k) Referee's Report.
*1199 (1) Contents of Report. Within 30 days after the conclusion of a trial before a referee or 10 days after the referee receives the transcripts of all hearings, whichever is later, or within such extended period of time as may be allowed by the chief justice for good cause shown, the referee shall make a report and enter it as part of the record, but failure to enter the report in the time prescribed shall not deprive the referee of jurisdiction. The referee's report shall include:
(A) a finding of fact as to each item of misconduct of which the respondent is charged, which findings of fact shall enjoy the same presumption of correctness as the judgment of the trier of fact in a civil proceeding;
(B) recommendations as to whether the respondent should be found guilty of misconduct justifying disciplinary measures;
(C) recommendations as to the disciplinary measures to be applied;
(D) a statement of any past disciplinary measures as to the respondent that are on record with the executive director of The Florida Bar or that otherwise become known to the referee through evidence properly admitted by the referee during the course of the proceedings (after a finding of guilt, all evidence of prior disciplinary measures may be offered by bar counsel subject to appropriate objection or explanation by respondent); and
(E) a statement of costs incurred and recommendations as to the manner in which such costs should be taxed.
(2) Filing. The referee's report and record of proceedings shall in all cases be transmitted together to the Supreme Court of Florida. Copies of the report shall be served on the parties including the staff counsel of The Florida Bar. The referee shall serve a copy of the record on staff counsel with the report. Staff counsel will make a copy of the record, as furnished, available to other parties on request and payment of the actual costs of reproduction.
(l) The Record.
(1) Reporting Recording of Testimony. All hearings at which testimony is presented shall be reported and the transcript of the testimony shall be filed in the cause attended by a court reporter who shall record all testimony. Transcripts of such testimony are not required to be filed in the matter, unless requested by a party, who shall pay the cost of transcription directly, or ordered by the referee, in which case the costs thereof are subject to assessment as elsewhere provided in these rules.
(2) Contents. The record shall include all items properly filed in the cause including pleadings, transcript of testimony, recorded testimony, if transcribed, exhibits in evidence, and the report of the referee.
(m) Plea of Guilty by Respondent. At any time during the progress of disciplinary proceedings, a respondent may tender a plea of guilty.
(1) Before Filing of Complaint. If the plea is tendered before filing of a complaint by staff counsel, such plea shall be tendered in writing to the grievance committee.
(2) After Filing of Complaint. If the complaint has been filed against the respondent, the respondent may enter a plea of guilty thereto by filing the same in writing with the referee to whom the cause has been assigned for trial. Such referee shall take such testimony thereto as may be advised, following which the referee will enter a report as otherwise provided.
(3) Unconditional. An unconditional plea of guilty shall not preclude review as to disciplinary measures imposed.
(4) Procedure. Except as herein provided, all procedure in relation to disposition of the cause on pleas of guilty shall be as elsewhere provided in these rules.
(n) Cost of Review or Reproduction.
(1) The actual cost of charge for reproduction, when photocopying or other reproduction is performed by the bar, for the purposes of these rules is determined by the board to be $1 per page shall be as determined and published annually by the executive director. In addition to reproduction charges, the bar may charge a reasonable fee *1200 incident to a request to review disciplinary records or for research into the records of disciplinary proceedings and identification of documents to be reproduced.
(2) When the bar is requested to reproduce documents that are voluminous or is requested to produce transcripts in the possession of the bar, the bar may decline to reproduce the documents in the offices of the bar and shall inform the requesting person of the following options:
(A) purchase of the transcripts from the court reporter service that produced them;
(B) purchase of the documents from the third party from whom the bar received them; or
(C) designation of a commercial photocopy service to whom which the bar shall deliver the original documents to be copied, at the requesting party's expense, provided the photocopy service agrees to preserve and return the original documents and not to release them to any person without the bar's consent.
(o) Costs.
(1) Taxable Costs. Taxable costs of the proceedings shall include only:
(A) investigative costs, including travel and out-of-pocket expenses;
(B) court reporters' fees;
(C) copy costs;
(D) telephone charges;
(E) fees for translation services;
(F) witness expenses, including travel and out-of-pocket expenses;
(G) travel and out-of-pocket expenses of the referee;
(H) travel and out-of-pocket expenses of counsel in the proceedings, including of the respondent if acting as counsel; and
(I) an administrative fee in the amount of $750 when costs are assessed in favor of the bar.
(2) Discretion of Referee. The referee shall have discretion to award costs and, absent an abuse of discretion, the referee's award shall not be reversed.
(3) Assessment of Bar Costs. When the bar is successful, in whole or in part, the referee may assess the bar's costs against the respondent unless it is shown that the costs of the bar were unnecessary, excessive, or improperly authenticated.
(4) Assessment of Respondent's Costs. When the bar is unsuccessful in the prosecution of a particular matter, the referee may assess the respondent's costs against the bar in the event that there was no justiciable issue of either law or fact raised by the bar.

RULE 3-7.7 PROCEDURES BEFORE SUPREME COURT OF FLORIDA
All reports of a referee and all judgments entered in proceedings under these rules shall be subject to review by the Supreme Court of Florida in the following manner:
(a) Right of Review.
(1) Any party to a proceeding may procure review of a report of a referee or a judgment, or any specified portion thereof, entered under these rules.
(2) The Supreme Court of Florida shall review all reports and judgments of referees recommending probation, public reprimand, suspension, disbarment, or resignation pending disciplinary proceedings.
(3) A referee's report that does not recommend probation, public reprimand, suspension, disbarment, or resignation pending disciplinary proceedings, shall be final if not appealed.
(b) Appointment of Bar Counsel. The board or staff counsel, if authorized by the board, may appoint new or additional bar counsel to represent The Florida Bar on any review.
(c) Procedure for Review. Review by the Supreme Court of Florida shall be in accordance with the following procedures:
(1) Time for Review. Proceedings for review shall be commenced within 15 days of the termination of the meeting of the board following by 10 days the mailing date of a letter from the referee serving a copy of the referee report on the respondent and The Florida Bar, but in all events the respondent *1201 shall be allowed at least 30 days after the mailing date of such letter to commence review. Prompt written notice of such termination date and the board's action, if any, shall be communicated to the respondent. The proceeding shall be commenced by filing with the Supreme Court of Florida a petition for review, specifying those portions of the report of a referee sought to be reviewed. Within 10 days after service of such petition, the opposing party may file a cross-petition for review specifying any additional portion of the report that said party desires reviewed. The filing of such petition or cross-petition shall be jurisdictional as to a review to be procured as a matter of right, but the court may, in its discretion, consider a late-filed petition or cross-petition upon a showing of good cause.
(2) Record on Review. The report and record filed by the referee shall constitute the record on review. If hearings were held at which testimony was heard, but no transcripts thereof were filed in the matter, the party seeking review shall order preparation of all such transcripts, file the original thereof with the court, and serve copies on the opposing party, on or before the time of filing of the initial brief, as provided elsewhere in this rule. The party seeking review shall be responsible for, and pay directly to the court reporter, the cost of preparation of transcripts. Failure to timely file and serve all of such transcripts may be cause for dismissal of the party's petition for review.
(3) Briefs. The party first seeking review shall file a brief in support of the petition for review within 30 days of the filing of the petition. The opposing party shall file an answer brief within 20 days after the service of the brief of the party seeking review, which answer brief shall also support any cross-petition for review. The party originally seeking review may file a reply brief within 10 days after the service of the answer brief.
(4) Oral Argument. Request for oral argument may be filed in any case wherein a petition for review is filed, at the time of filing the first brief. If no request is filed, the case will be disposed of without oral argument unless the court orders otherwise.
(5) Burden. Upon review, the burden shall be upon the party seeking review to demonstrate that a report of a referee sought to be reviewed is erroneous, unlawful, or unjustified.
(6) Judgment of Supreme Court of Florida. After review, the Supreme Court of Florida shall enter an appropriate order or judgment. If no review is sought of a report of a referee entered under the rules and filed in the court, the findings of fact shall be deemed conclusive and the disciplinary measure recommended by the referee shall be the disciplinary measure imposed by the court, unless the court directs the parties to submit briefs or oral argument directed to the suitability of the disciplinary measure recommended by the referee. A referee's report that becomes final when no review has been timely filed shall be reported in an order of the Supreme Court of Florida.
(d) Precedence of Proceedings. Petitions for review in disciplinary proceedings shall take precedence over all other civil causes in the Supreme Court of Florida.
(e) Extraordinary Writs. All applications for extraordinary writs that are concerned with disciplinary proceedings under these rules of discipline shall be made to the Supreme Court of Florida.
(f) Florida Rules of Appellate Procedure. To the extent necessary to implement this rule and if not inconsistent herewith, the Florida Rules of Appellate Procedure shall be applicable to petitions for review in disciplinary proceedings, provided service on The Florida Bar shall be accomplished by service on bar counsel and staff counsel.
(g) Contempt by Respondent. Whenever it is alleged that a respondent is in contempt in a disciplinary proceeding, a petition for an order to show cause why the respondent should not be held in contempt and the proceedings on such petition may be filed in and determined by the Supreme Court of Florida or as provided under rule 3-7.11(f).
(h) Pending Disciplinary Cases. If disbarment is ordered by the court, dismissal without prejudice of other pending cases *1202 against the respondent may be ordered in the court's disbarment order.

RULE 3-7.9 CONSENT JUDGMENT
(a) Before Formal Complaint is Filed. If before a formal complaint is filed a respondent states a desire to plead guilty to a grievance committee report that finds probable cause and recommends further disciplinary proceedings, then staff counsel, with the approval of the designated board reviewer and concurrence of the board of governors, may consult established board guidelines for discipline, and advise the respondent of the discipline that will be recommended to the Supreme Court of Florida if a written plea of guilty is entered. If the board of governors or designated reviewer rejects a proposed consent judgment, staff counsel shall prepare and file a complaint as provided elsewhere in these rules.
(b) After Filing of Formal Complaint. If a respondent states a desire to plead guilty to a formal complaint that has been filed, then bar counsel, with the approval of the designated board reviewer, may consult established board guidelines for discipline and advise the respondent of the discipline the bar will recommend to the referee if a written plea of guilty is entered.
(c) Approval of Consent Judgments. Acceptance of any proposed consent judgment more severe than an admonishment shall be conditioned on final approval by the Supreme Court of Florida, and the court's order will recite the disciplinary charges against the respondent.
(d) Content of Conditional Pleas. All conditional pleas shall show clearly by reference or otherwise the disciplinary offenses to which the plea is made.
(e) Authority of Staff Counsel. Staff counsel has no authority to commit the board on any consent judgment not previously approved by the board. All consent judgments tentatively approved by staff counsel without prior approval of the board shall be subject to board approval. In negotiating consent judgments with a respondent or in recommending acceptance, rejection, or offer of a tendered consent judgment, the grievance committee, branch staff counsel, and designated reviewer shall consider and express a recommendation on whether the consent judgment shall include withdrawal of any designations revocation of certification if held by the attorney and restrictions to be placed on redesignation recertification in such areas. When withdrawal of designation certification revocation is agreed to in a consent judgment, the withdrawal revocation and any conditions on redesignation recertification will be reported to the designation staff legal specialization and education director for recording purposes.

RULE 3-7.10 REINSTATEMENT AND READMISSION PROCEDURES
(a) Readmission. A former member who has been disbarred or whose petition for disciplinary resignation has been accepted, pursuant to rule 3-7.12, may be admitted again only upon full compliance with the rules and regulations governing admission to the bar. Except as might be otherwise provided in these rules, no application for admission may be tendered within 5 years after the date of disbarment or such longer period as the court might determine in the disbarment order.
(b) Reinstatement. An attorney who has been suspended may be reinstated to membership in The Florida Bar pursuant to this rule. The proceedings under this rule are not applicable to suspension for nonpayment of dues membership fees.
(c) Petitions; Form and Contents.
(1) Filing. The original petition for reinstatement and 1 copy thereof shall be in writing, verified by the petitioner, and addressed to and filed with the Supreme Court of Florida. A copy shall be served on The Florida Bar in Tallahassee.
(2) Form and Exhibits. The petition shall be in such form and shall be accompanied by such exhibits as provided for in rule 3-7.10(n)(1) and (2). The information required concerning the petitioner may include any or all of the following matters in addition to such other matters as may be reasonably required to determine the fitness of the petitioner to resume the practice of law: criminal and civil judgments, disciplinary judgments, *1203 copies of income tax returns together with consents to secure original returns, occupation during suspension and information in connection therewith, financial statements, and statement of restitution of funds that were the subject matter of disciplinary proceedings.
(d) Deposit for Cost. The petition shall be accompanied by proof of a deposit paid to The Florida Bar in such amount as the board of governors shall prescribe to ensure payment of reasonable costs of the proceedings, as provided in rule 3-7.10(o).
(e) Reference of Petition For Hearing. The chief justice shall refer the petition for reinstatement to a referee for hearing; provided, however, that no such reference shall be made until evidence is submitted showing that all costs assessed against the petitioner in all disciplinary proceedings have been paid and restitution has been made.
(f) Attorney for the Bar. When a petition for reinstatement is filed, the board of governors or staff counsel, if authorized by the board of governors, may appoint, from the members in good standing of The Florida Bar designated by the staff counsel to serve as bar counsel, one 1 or more attorneys to represent The Florida Bar in the proceeding. The duties of such attorneys shall be to appear at the hearings and to prepare and present to the referee evidence that, in the opinion of the referee or such attorneys, should be considered in passing upon the petition.
(g) Determination of Fitness by Referee Hearing. The referee to whom the petition for reinstatement is referred shall conduct the hearing as a trial, in the same manner, to the extent practical, as proceedings are conducted under the rule concerning trials. The matter to decide shall be the fitness of the petitioner to resume the practice of law.
(h) Hearing; Notice; Evidence.
(1) Notice. The referee to whom the petition for reinstatement is referred shall fix a time and place for hearing, and notice thereof shall be given at least 10 days prior to the hearing to the petitioner, to attorneys representing The Florida Bar, and to such other persons as may be designated by the referee to whom the petition is referred.
(2) Appearance. Any persons to whom notice is given, any other interested persons, or any local bar association may appear before the referee in support of or in opposition to the petition at any time or times fixed for hearings thereon.
(3) Failure of Petitioner to be Examined. For the failure of the petitioner to submit to examination as a witness pursuant to notice given, the referee shall dismiss the petition for reinstatement unless good cause is shown for such failure.
(4) Summary Procedure. If after the completion of discovery bar counsel is unable to discover any evidence on which denial of reinstatement may be based and if no other person provides same, bar counsel may, with the approval of the designated reviewer and staff counsel, stipulate to the issue of reinstatement, including conditions thereon. The stipulation shall include a statement of costs as provided elsewhere in these Rules Regulating The Florida Bar.
(i) Prompt Hearing; Report. The referee to whom a petition for reinstatement has been referred by the chief justice shall proceed to a prompt hearing, at the conclusion of which the referee shall make and file with the Supreme Court of Florida a report that shall include the findings of fact and a recommendation as to whether the petitioner is qualified to resume the practice of law. Such report shall be in the form prescribed by the board. The referee shall file the report and record in the Supreme Court of Florida and shall serve a copy of the report and record on staff counsel and a copy of the report only on all other parties. Staff counsel shall make a copy of the record, as furnished, available to other parties upon request and payment of actual costs of reproduction.
(j) Review. Review of referee reports in reinstatement proceedings shall be in accordance with rule 3-7.7.
(k) Judgment. If the petitioner is found unfit to resume the practice of law, the petition shall be dismissed. If the petitioner is found fit to resume the practice of law, the judgment shall reinstate the petitioner in *1204 The Florida Bar; provided, however, that the judgment may make such reinstatement conditional upon the payment of all or part of the costs of the proceeding and upon the making of partial or complete restitution to parties harmed by the petitioner's misconduct that led to the petitioner's suspension of membership in The Florida Bar; and further provided, however, if suspension of the petitioner has continued for more than 3 years, the reinstatement may be conditioned upon the furnishing of such proof of competency as may be required by the judgment in the discretion of the Supreme Court of Florida, which proof may include certification by the Florida Board of Bar Examiners of the successful completion of an examination for admission to The Florida Bar subsequent to the date of the suspension.
(l) Successive Petitions. No petition for reinstatement shall be filed within 1 year following an adverse judgment upon a petition for reinstatement filed by or on behalf of the same person.
(m) Readmission After Disciplinary Resignation. In the case of a disciplinary resignation, no readmission application may be filed until 3 years after the date of the order of the Supreme Court of Florida that accepted such disciplinary resignation or such additional time as the attorney may have stated in a petition for disciplinary resignation. No application for readmission may be filed until all costs in disciplinary cases that were dismissed because of the disciplinary resignation have been paid by the applicant for readmission. If an attorney's petition for disciplinary resignation states that it is without leave to apply for readmission, such condition shall preclude any readmission.
(n) Petitions for Reinstatement to Membership in Good Standing.
(1) Availability. Petitions for reinstatement under this rule are available to suspended members of the bar when the disciplinary judgment conditions their reinstatement upon a showing of compliance with specified conditions.
(2) Style of Petition. Petitions shall be styled in the Supreme Court of Florida and filed with the Supreme Court of Florida in quadruplicate, with a copy served on staff counsel and The Florida Bar in Tallahassee.
(3) Contents of Petition. The petition shall be verified by the petitioner and shall be accompanied by a written authorization to the District Director of the Internal Revenue Service, authorizing the furnishing of certified copies of the petitioner's tax returns for the past 5 years or since admission to the bar, whichever is greater. The authorization shall be furnished on a separate sheet. The petition shall have attached as an exhibit a true copy of all disciplinary judgments previously entered against the petitioner. It shall also include the petitioner's statement concerning the following:
(A) name, age, residence, address, and number and relation of dependents of the petitioner;
(B) the offense or misconduct upon which the suspension was based, together with the date of such suspension;
(C) the names and addresses of all complaining witnesses in any disciplinary proceedings that resulted in suspension; and the name and address of the referee or judge who heard such disciplinary proceedings or of the trial judge, complaining witnesses, and prosecuting attorney, if suspension was based upon conviction of a felony or misdemeanor involving moral turpitude;
(D) the nature of the petitioner's occupation in detail since suspension, with names and addresses of all partners, associates in business, and employers, if any, and dates and duration of all such relations and employments;
(E) a statement showing the approximate monthly earnings and other income of the petitioner and the sources from which all such earnings and income were derived during said period;
(F) a statement showing all residences maintained during said period, with names and addresses of landlords, if any;
(G) a statement showing all financial obligations of the petitioner including but not *1205 limited to amounts claimed, unpaid, or owing to the Florida Bar Clients' Security Fund or former clients at the date of filing of the petition, together with the names and addresses of all creditors;
(H) a statement of restitution made for any and all obligations to all former clients and the Florida Bar Clients' Security Fund and the source and amount of funds used for this purpose;
(I) a statement showing dates, general nature, and ultimate disposition of every matter involving the arrest or prosecution of the petitioner during said period for any crime, whether felony or misdemeanor, together with the names and addresses of complaining witnesses, prosecuting attorneys, and trial judges;
(J) a statement as to whether any applications were made during said period for a license requiring proof of good character for its procurement; and, as to each such application, the date and the name and address of the authority to whom it was addressed and the disposition thereof;
(K) a statement of any procedure or inquiry, during said period, covering the petitioner's standing as a member of any profession or organization, or holder of any license or office, that involved the censure, removal, suspension, revocation of license, or discipline of the petitioner; and, as to each, the dates, facts, and the disposition thereof and the name and address of the authority in possession of the record thereof;
(L) a statement as to whether any charges of fraud were made or claimed against the petitioner during said period, whether formal or informal, together with the dates and names and addresses of persons making such charges;
(M) a concise statement of facts claimed to justify reinstatement to The Florida Bar;
(N) a statement showing the dates, general nature, and final disposition of every civil action wherein the petitioner was either a party plaintiff or defendant, together with dates of filing of complaints, titles of courts and causes, and the names and addresses of all parties and of the trial judge or judges, and names and addresses of all witnesses who testified in said action or actions; and
(O) a statement showing what amounts, if any, of the costs assessed against the accused attorney in the prior disciplinary proceedings against the petitioner have been paid by the petitioner and the source and amount of funds used for this purpose.
(4) Comments on Petition. Upon the appointment of a referee and bar counsel, copies of the petition shall be furnished by the executive director to local board members, local grievance committees, and to such other persons as are mentioned in this rule. Persons will be asked to direct their comments to bar counsel. The proceedings and finding of the referee shall relate to those matters described in this rule and also to those matters tending to show the petitioner's rehabilitation, present fitness to resume the practice of law, and the effect of such proposed reinstatement upon the administration of justice and purity of the courts and confidence of the public in the profession.
(5) Costs Deposit. The petition shall be accompanied by a deposit for costs of $500.
(o) Costs.
(1) Taxable Costs. Taxable costs of the proceedings shall include only:
(A) investigative costs, including travel and out-of-pocket expenses;
(B) court reporters' fees;
(C) copy costs;
(D) telephone charges;
(E) fees for translation services;
(F) witness expenses, including travel and out-of-pocket expenses;
(G) travel and out-of-pocket expenses of the referee;
(H) travel and out-of-pocket expenses of counsel in the proceedings, including the petitioner if acting as counsel; and
(I) an administrative fee in the amount of $750 when costs are assessed in favor of the bar.
(2) Discretion of Referee. The referee shall have discretion to award costs and absent *1206 an abuse of discretion the referee's award shall not be reversed.
(3) Assessment of Bar Costs. When the bar is successful, in whole or in part, the referee may assess the bar's costs against the petitioner unless it is shown that the costs of the bar were unnecessary, excessive, or improperly authenticated.
(4) Assessment of Petitioner's Costs. When the bar unsuccessfully opposes a petition for reinstatement or readmission, the referee may assess the petitioner's costs against the bar in the event that there was no justiciable issue of either law or fact raised by the bar.

RULE 4-1.5 FEES FOR LEGAL SERVICES
(a) Illegal, Prohibited, or Clearly Excessive Fees. An attorney shall not enter into an agreement for, charge, or collect an illegal, prohibited, or clearly excessive fee or a fee generated by employment that was obtained through advertising or solicitation not in compliance with the Rules Regulating The Florida Bar. A fee is clearly excessive when:
(1) after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee exceeds a reasonable fee for services provided to such a degree as to constitute clear overreaching or an unconscionable demand by the attorney; or
(2) the fee is sought or secured by the attorney by means of intentional misrepresentation or fraud upon the client, a nonclient party, or any court, as to either entitlement to, or amount of, the fee.
(b) Factors to be Considered in Determining Reasonable Fee. Factors to be considered as guides in determining a reasonable fee include:
(1) the time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature;
(4) the significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained;
(5) the time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and
(8) whether the fee is fixed or contingent, and, if fixed as to amount or rate, then whether the client's ability to pay rested to any significant degree on the outcome of the representation.
(c) Consideration of All Factors. In determining a reasonable fee, the time devoted to the representation and customary rate of fee need not be the sole or controlling factors. All factors set forth in this rule should be considered, and may be applied, in justification of a fee higher or lower than that which would result from application of only the time and rate factors.
(d) Enforceability of Fee Contracts. Contracts or agreements for attorney's fees between attorney and client will ordinarily be enforceable according to the terms of such contracts or agreements, unless found to be illegal, obtained through advertising or solicitation not in compliance with the Rules Regulating The Florida Bar, prohibited by this rule, or clearly excessive as defined by this rule.
(e) Duty to Communicate Basis or Rate of Fee to Client. When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation.
*1207 (f) Contingent Fees. As to contingent fees:
(1) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (f)(3) or by law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial, or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.
(2) Every lawyer who accepts a retainer or enters into an agreement, express or implied, for compensation for services rendered or to be rendered in any action, claim, or proceeding whereby the lawyer's compensation is to be dependent or contingent in whole or in part upon the successful prosecution or settlement thereof shall do so only where such fee arrangement is reduced to a written contract, signed by the client, and by a lawyer for the lawyer or for the law firm representing the client. No lawyer or firm may participate in the fee without the consent of the client in writing. Each participating lawyer or law firm shall sign the contract with the client and shall agree to assume joint legal responsibility to the client for the performance of the services in question as if each were partners of the other lawyer or law firm involved. The client shall be furnished with a copy of the signed contract and any subsequent notices or consents. All provisions of this rule shall apply to such fee contracts.
(3) A lawyer shall not enter into an arrangement for, charge, or collect:
(A) any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support, or property settlement in lieu thereof; or
(B) a contingent fee for representing a defendant in a criminal case.
(4) A lawyer who enters into an arrangement for, charges, or collects any fee in an action or claim for personal injury or for property damages or for death or loss of services resulting from personal injuries based upon tortious conduct of another, including products liability claims, whereby the compensation is to be dependent or contingent in whole or in part upon the successful prosecution or settlement thereof shall do so only under the following requirements:
(A) The contract shall contain the following provisions:
(i) "The undersigned client has, before signing this contract, received and read the statement of client's rights and understands each of the rights set forth therein. The undersigned client has signed the statement and received a signed copy to refer to while being represented by the undersigned attorney(s)."
(ii) "This contract may be cancelled by written notification to the attorney at any time within 3 business days of the date the contract was signed, as shown below, and if cancelled the client shall not be obligated to pay any fees to the attorney for the work performed during that time. If the attorney has advanced funds to others in representation of the client, the attorney is entitled to be reimbursed for such amounts as the attorney has reasonably advanced on behalf of the client."
(B) The contract for representation of a client in a matter set forth in subdivision (f)(4) may provide for a contingent fee arrangement as agreed upon by the client and the lawyer, except as limited by the following provisions:
(i) Without prior court approval as specified below, any contingent fee that exceeds the following standards shall be presumed, unless rebutted, to be clearly excessive:
a. Before the filing of an answer or the demand for appointment of arbitrators *1208 or, if no answer is filed or no demand for appointment of arbitrators is made, the expiration of the time period provided for such action:
1. 33-1/3% of any recovery up to $1 million; plus
2. 30% of any portion of the recovery between $1 million and $2 million; plus
3. 20% of any portion of the recovery exceeding $2 million.
b. After the filing of an answer or the demand for appointment of arbitrators or, if no answer is filed or no demand for appointment of arbitrators is made, the expiration of the time period provided for such action, through the entry of judgment.
1. 40% of any recovery up to $1 million; plus
2. 30% of any portion of the recovery between $1 million and $2 million; plus
3. 20% of any portion of the recovery exceeding $2 million.
c. If all defendants admit liability at the time of filing their answers and request a trial only on damages:
1. 33-1/3% of any recovery up to $1 million; plus
2. 20% of any portion of the recovery between $1 million and $2 million; plus
3. 15% of any portion of the recovery exceeding $2 million.
d. An additional 5% of any recovery after notice of appeal institution of any appellate proceeding is filed or post-judgment relief or action is required for recovery on the judgment.
(ii) If any client is unable to obtain an attorney of the client's choice because of the limitations set forth in (f)(4)(B)(i), the client may petition the circuit court in which the matter would be filed, if litigation is necessary, or if such court will not accept jurisdiction for the fee division, the circuit court wherein the cause of action arose, for approval of any fee contract between the client and an attorney of the client's choosing. Such authorization shall be given if the court determines the client has a complete understanding of the client's rights and the terms of the proposed contract. The application for authorization of such a contract can be filed as a separate proceeding before suit or simultaneously with the filing of a complaint. Proceedings thereon may occur before service on the defendant and this aspect of the file may be sealed. Authorization of such a contract shall not bar subsequent inquiry as to whether the fee actually claimed or charged is clearly excessive under subdivisions (a) and (b).
(iii) In cases where the client is to receive a recovery that will be paid to the client on a future structured or periodic basis, the contingent fee percentage shall only be calculated on the cost of the structured verdict or settlement or, if the cost is unknown, on the present money value of the structured verdict or settlement, whichever is less. If the damages and the fee are to be paid out over the long term future schedule, then this limitation does not apply. No attorney may separately negotiate with the defendant for that attorney's fee in a structured verdict or settlement where such separate negotiations would place the attorney in a position of conflict.
(C) Before a lawyer enters into a contingent fee contract for representation of a client in a matter set forth in this rule, the lawyer shall provide the client with a copy of the statement of client's rights and shall afford the client a full and complete opportunity to understand each of the rights as set forth therein. A copy of the statement, signed by both the client and the lawyer, shall be given to the client to retain and the lawyer shall keep a copy in the client's file. The statement shall be retained by the lawyer with the written fee contract and closing statement under the same conditions and requirements as subdivision (f)(5).
(D) As to lawyers not in the same firm, a division of any fee within subdivision (f)(4) shall be on the following basis:
(i) To the lawyer assuming primary responsibility for the legal services on behalf of the client, a minimum of 75% of the total fee.
*1209 (ii) To the lawyer assuming secondary responsibility for the legal services on behalf of the client, a maximum of 25% of the total fee. Any fee in excess of 25% shall be presumed to be clearly excessive.
(iii) The 25% limitation shall not apply to those cases in which 2 or more lawyers or firms accept substantially equal active participation in the providing of legal services. In such circumstances counsel shall apply for circuit to the court in which the matter would be filed, if litigation is necessary, or if such court will not accept jurisdiction for the fee division, the circuit court wherein the cause of action arose, for authorization of the fee division in excess of 25%, based upon a sworn petition signed by all counsel that shall disclose in detail those services to be performed. The application for authorization of such a contract may be filed as a separate proceeding before suit or simultaneously with the filing of a complaint. Proceedings thereon may occur before service of process on any party and this aspect of the file may be sealed. Authorization of such contract shall not bar subsequent inquiry as to whether the fee actually claimed or charged is clearly excessive. An application under this subdivision shall contain a certificate showing service on the client and The Florida Bar. Counsel may proceed with representation of the client pending court approval.
(iv) The percentages required by this subdivision shall be applicable after deduction of any fee payable to separate counsel retained especially for appellate purposes.
(5) In the event there is a recovery, upon the conclusion of the representation, the lawyer shall prepare a closing statement reflecting an itemization of all costs and expenses, together with the amount of fee received by each participating lawyer or law firm. A copy of the closing statement shall be executed by all participating lawyers, as well as the client, and each shall receive a copy. Each participating lawyer shall retain a copy of the written fee contract and closing statement for 6 years after execution of the closing statement. Any contingent fee contract and closing statement shall be available for inspection at reasonable times by the client, by any other person upon judicial order, or by the appropriate disciplinary agency.
(g) Division of Fees Between Lawyers in Different Firms. Subject to the provisions of subdivision (f)(4)(D), a division of fee between lawyers who are not in the same firm may be made only if the total fee is reasonable and:
(1) the division is in proportion to the services performed by each lawyer; or
(2) by written agreement with the client:
(A) each lawyer assumes joint legal responsibility for the representation and agrees to be available for consultation with the client; and
(B) the agreement fully discloses that a division of fees will be made and the basis upon which the division of fees will be made.
(h) Credit Plans. Charges made by any lawyer or law firm under an approved credit plan shall be only for services actually rendered or cash actually paid on behalf of the client. No higher fee shall be charged and no additional charge shall be imposed by reason of a lawyer's or law firm's participation in an approved credit plan.

STATEMENT OF CLIENT'S RIGHTS FOR CONTINGENCY FEES
Before you, the prospective client, arrange a contingent fee agreement with a lawyer, you should understand this statement of your rights as a client. This statement is not a part of the actual contract between you and your lawyer, but, as a prospective client, you should be aware of these rights:
1. There is no legal requirement that a lawyer charge a client a set fee or a percentage of money recovered in a case. You, the client, have the right to talk with your lawyer about the proposed fee and to bargain about the rate or percentage as in any other contract. If you do not reach an agreement with one 1 lawyer you may talk with other lawyers.
*1210 2. Any contingent fee contract must be in writing and you have 3 business days to reconsider the contract. You may cancel the contract without any reason if you notify your lawyer in writing within 3 business days of signing the contract. If you withdraw from the contract within the first 3 business days, you do not owe the lawyer a fee although you may be responsible for the lawyer's actual costs during that time. If your lawyer begins to represent you, your lawyer may not withdraw from the case without giving you notice, delivering necessary papers to you, and allowing you time to employ another lawyer. Often, your lawyer must obtain court approval before withdrawing from a case. If you discharge your lawyer without good cause after the 3-day period, you may have to pay a fee for work the lawyer has done.
3. Before hiring a lawyer, you, the client, have the right to know about the lawyer's education, training, and experience. If you ask, the lawyer should tell you specifically about the lawyer's actual experience dealing with cases similar to yours. If you ask, the lawyer should provide information about special training or knowledge and give you this information in writing if you request it.
4. Before signing a contingent fee contract with you, a lawyer must advise you whether the lawyer intends to handle your case alone or whether other lawyers will be helping with the case. If your lawyer intends to refer the case to other lawyers, the lawyer should tell you what kind of fee sharing arrangement will be made with the other lawyers. If lawyers from different law firms will represent you, at least 1 lawyer from each law firm must sign the contingent fee contract.
5. If your lawyer intends to refer your case to another lawyer or counsel with other lawyers, your lawyer should tell you about that at the beginning. If your lawyer takes the case and later decides to refer it to another lawyer or to associate with other lawyers, you should sign a new contract that includes the new lawyers. You, the client, also have the right to consult with each lawyer working on your case and each lawyer is legally responsible to represent your interests and is legally responsible for the acts of the other lawyers involved in the case.
6. You, the client, have the right to know in advance how you will need to pay the expenses and the legal fees at the end of the case. If you pay a deposit in advance for costs, you may ask reasonable questions about how the money will be or has been spent and how much of it remains unspent. Your lawyer should give a reasonable estimate about future necessary costs. If your lawyer agrees to lend or advance you money to prepare or research the case, you have the right to know periodically how much money your lawyer has spent on your behalf. You also have the right to decide, after consulting with your lawyer, how much money is to be spent to prepare a case. If you pay the expenses, you have the right to decide how much to spend. Your lawyer should also inform you whether the fee will be based on the gross amount recovered or on the amount recovered minus the costs.
7. You, the client, have the right to be told by your lawyer about possible adverse consequences if you lose the case. Those adverse consequences might include money that you might have to pay to your lawyer for costs and liability you might have for attorney's fees, costs, and expenses to the other side.
8. You, the client, have the right to receive and approve a closing statement at the end of the case before you pay any money. The statement must list all of the financial details of the entire case, including the amount recovered, all expenses, and a precise statement of your lawyer's fee. Until you approve the closing statement you need not pay any money to anyone, including your lawyer. You also have the right to have every lawyer or law firm working on your case sign this closing statement.
9. You, the client, have the right to ask your lawyer at reasonable intervals how the case is progressing and to have these questions answered to the best of your lawyer's ability.
10. You, the client, have the right to make the final decision regarding settlement *1211 of a case. Your lawyer must notify you of all offers of settlement before and after the trial. Offers during the trial must be immediately communicated and you should consult with your lawyer regarding whether to accept a settlement. However, you must make the final decision to accept or reject a settlement.
11. If at any time you, the client, believe that your lawyer has charged an excessive or illegal fee, you have the right to report the matter to The Florida Bar, the agency that oversees the practice and behavior of all lawyers in Florida. For information on how to reach The Florida Bar, call 904- 850/561-5600, or contact the local bar association. Any disagreement between you and your lawyer about a fee can be taken to court and you may wish to hire another lawyer to help you resolve this disagreement. Usually fee disputes must be handled in a separate lawsuit unless your fee contract provides for arbitration. You can request, by may not require, that a provision for arbitration (under chapter 682, Florida Statutes, or under the fee arbitration rule of the Rules Regulating The Florida Bar) be included in your fee contract.
 __________________ ____________________
 Client Signature Attorney Signature
 __________________ ____________________
 Date Date

Comment

Basis or rate of fee
When the lawyer has regularly represented a client, they ordinarily will have evolved an understanding concerning the basis or rate of the fee. In a new client-lawyer relationship, however, an understanding as to the fee should be promptly established. It is not necessary to recite all the factors that underlie the basis of the fee but only those that are directly involved in its computation. It is sufficient, for example, to state the basic rate is an hourly charge or a fixed amount or an estimated amount, or to identify the factors that may be taken into account in finally fixing the fee. When developments occur during the representation that render an earlier estimate substantially inaccurate, a revised estimate should be provided to the client. A written statement concerning the fee reduces the possibility of misunderstanding. Furnishing the client with a simple memorandum or a copy of the lawyer's customary fee schedule is sufficient if the basis or rate of the fee is set forth.
Rule 4-1.8(e) should be consulted regarding a lawyer's providing financial assistance to a client in connection with litigation.

Terms of payment
A lawyer may require advance payment of a fee but is obliged to return any unearned portion. See rule 4-1.16(d). A lawyer is not, however, required to return retainers that, pursuant to an agreement with a client, are not refundable. A lawyer may accept property in payment for services, such as an ownership interest in an enterprise, providing this does not involve acquisition of a proprietary interest in the cause of action or subject matter of the litigation contrary to rule 4-1.8(i). However, a fee paid in property instead of money may be subject to special scrutiny because it involves questions concerning both the value of the services and the lawyer's special knowledge of the value of the property.
An agreement may not be made whose terms might induce the lawyer improperly to curtail services for the client or perform them in a way contrary to the client's interest. For example, a lawyer should not enter into an agreement whereby services are to be provided only up to a stated amount when it is foreseeable that more extensive services probably will be required, unless the situation is adequately explained to the client. Otherwise, the client might have to bargain for further assistance in the midst of a proceeding or transaction. However, it is proper to define the extent of services in light of the client's ability to pay. A lawyer should not exploit a fee arrangement based primarily on hourly charges by using wasteful procedures. When there is doubt whether a contingent fee is consistent with the client's best interest, the lawyer should offer the client alternative bases for the fee and explain their implications. Applicable law may impose *1212 limitations on contingent fees, such as a ceiling on the percentage.
Rule 4-1.5(f)(3) does not apply to lawyers seeking to obtain or enforce judgments for arrearages.

Contingent fee regulation
Rule 4-1.5(f)(4) should not be construed to apply to actions or claims seeking property or other damages arising in the commercial litigation context.
Rule 4-1.5(f)(4)(B) is intended to apply only to contingent aspects of fee agreements. In the situation where a lawyer and client enter a contract for part noncontingent and part contingent attorney's fees, rule 4-1.5(f)(4)(B) should not be construed to apply to and prohibit or limit the noncontingent portion of the fee agreement. An attorney could properly charge and retain the noncontingent portion of the fee even if the matter was not successfully prosecuted or if the noncontingent portion of the fee exceeded the schedule set forth in rule 4-1.5(f)(4)(B). Rule 4-1.5(f)(4)(B) should, however, be construed to apply to any additional contingent portion of such a contract when considered together with earned noncontingent fees. Thus, under such a contract a lawyer may demand or collect only such additional contingent fees as would not cause the total fees to exceed the schedule set forth in rule 4-1.5(f)(4)(B).
The limitations in rule 4-1.5(f)(4)(B)(i)c are only to be applied in the case where all the defendants admit liability at the time they file their initial answer and the trial is only on the issue of the amount or extent of the loss or the extent of injury suffered by the client. If the trial involves not only the issue of damages but also such questions as proximate cause, affirmative defenses, seat belt defense, or other similar matters, the limitations are not to be applied because of the contingent nature of the case being left for resolution by the trier of fact.
Rule 4-1.5(f)(4)(B)(ii) provides the limitations set forth in subdivision (f)(4)(B)(i) may be waived by the client upon approval by a circuit court the appropriate judge. This waiver provision may not be used to authorize a lawyer to charge a client a fee that would exceed rule 4-1.5(a) or (b). It is contemplated that this waiver provision will not be necessary except where the client wants to retain a particular lawyer to represent the client or the case involves complex, difficult, or novel questions of law or fact that would justify a contingent fee greater than the schedule but not a contingent fee that would exceed rule 4-1.5(b).
Upon a petition by a client, the trial court reviewing the waiver request must grant that request if the trial court finds the client: (a) understands the right to have the limitations in rule 4-1.5(f)(4)(B) applied in the specific matter; and (b) understands and approves the terms of the proposed contract. The consideration by the trial court of the waiver petition is not to be used as an opportunity for the court to inquire into the merits or details of the particular action or claim that is the subject of the contract.
The proceedings before the trial court and the trial court's decision on a waiver request are to be confidential and not subject to discovery by any of the parties to the action or by any other individual or entity except The Florida Bar. However, terms of the contract approved by the trial court may be subject to discovery if the contract (without court approval) was subject to discovery under applicable case law or rules of evidence.
Rule 4-1.5(f)(4)(B)(iii) prohibits a lawyer from charging the contingent fee percentage on the total, future value of a recovery being paid on a structured or periodic basis. This prohibition does not apply if the lawyer's fee is being paid over the same length of time as the schedule of payments to the client.

Division of fee
A division of fee is a single billing to a client covering the fee of two 2 or more lawyers who are not in the same firm. A division of fee facilitates association of more than one 1 lawyer in a matter in which neither alone could serve the client as well, and most often is used when the fee is contingent and the division is between a referring lawyer and a trial specialist. Subject to the provisions of subdivision (f)(4)(D), subdivision (g) permits the lawyers to divide a fee on either the basis of the proportion of services *1213 they render or by agreement between the participating lawyers if all assume responsibility for the representation as a whole and the client is advised and does not object. It does require disclosure to the client of the share that each lawyer is to receive. Joint responsibility for the representation entails the obligations stated in rule 4-5.1 for purposes of the matter involved.

Disputes over fees
Since the fee arbitration rule (Chapter 14) has been established by the bar to provide a procedure for resolution of fee disputes, the lawyer should conscientiously consider submitting to it. Where law prescribes a procedure for determining a lawyer's fee, for example, in representation of an executor or administrator, a class, or a person entitled to a reasonable fee as part of the measure of damages, the lawyer entitled to such a fee and a lawyer representing another party concerned with the fee should comply with the prescribed procedure.

Referral fees and practices
A secondary lawyer shall not be entitled to a fee greater than the limitation set forth in rule 4-1.5(f)(4)(D)(ii) merely because the lawyer agrees to do some or all of the following: (a) consults with the client; (b) answers interrogatories; (c) attends depositions; (d) reviews pleadings; (e) attends the trial; or (f) assumes joint legal responsibility to the client. However, the provisions do not contemplate that a secondary lawyer who does more than the above is necessarily entitled to a larger percentage of the fee than that allowed by the limitation.
The provisions of rule 4-1.5(f)(4)(D)(iii) only apply where the participating lawyers have for purposes of the specific case established a co-counsel relationship. The need for court approval of a referral fee arrangement under rule 4-1.5(f)(4)(D)(iii) should only occur in a small percentage of cases arising under rule 4-1.5(f)(4).
In determining if a co-counsel relationship exists, the court should look to see if the lawyers have established a special partnership agreement for the purpose of the specific case or matter. If such an agreement does exist, it must provide for a sharing of services or responsibility and the fee division is based upon a division of the services to be rendered or the responsibility assumed. It is contemplated that a co-counsel situation would exist where a division of responsibility is based upon, but not limited to, the following: (a) based upon geographic considerations, the lawyers agree to divide the legal work, responsibility, and representation in a convenient fashion. Such a situation would occur when different aspects of a case must be handled in different locations; (b) where the lawyers agree to divide the legal work and representation based upon their particular expertise in the substantive areas of law involved in the litigation; or (c) where the lawyers agree to divide the legal work and representation along established lines of division, such as liability and damages, causation and damages, or other similar factors.
The trial court's responsibility when reviewing an application for authorization of a fee division under rule 4-1.5(f)(4)(D)(iii) is to determine if a co-counsel relationship exists in that particular case. If the court determines a co-counsel relationship exists and authorizes the fee division requested, the court does not have any responsibility to review or approve the specific amount of the fee division agreed upon by the lawyers and the client.
Rule 4-1.5(f)(4)(D)(iv) applies to the situation where appellate counsel is retained during the trial of the case to assist with the appeal of the case. The percentages set forth in subdivision (f)(4)(D) are to be applicable after appellate counsel's fee is established. However, the effect should not be to impose an unreasonable fee on the client.

RULE 4-3.4 FAIRNESS OF TO OPPOSING PARTY AND COUNSEL
A lawyer shall not:
(a) unlawfully obstruct another party's access to evidence or otherwise unlawfully alter, destroy, or conceal a document or other material that the lawyer knows or reasonably should know is relevant to a pending or a reasonably foreseeable proceeding; nor counsel or assist another person to do any such act.
*1214 (b) fabricate evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness, except a lawyer may pay a witness reasonable expenses incurred by the witness in attending or testifying at proceedings; a reasonable, noncontingent fee for professional services of an expert witness; and reasonable compensation to reimburse a witness for the loss of compensation incurred by reason of preparing for, attending, or testifying at proceedings.
(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.
(d) in pretrial procedure, make a frivolous discovery request or intentionally fail to comply with a legally proper discovery request by an opposing party.
(e) in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant, or the guilt or innocence of an accused.
(f) request a person other than a client to refrain from voluntarily giving relevant information to another party unless:
(1) the person is a relative or an employee or other agent of a client, and
(2) it is reasonable to believe that the person's interests will not be adversely affected by refraining from giving such information.
(g) present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter.
(h) present, participate in presenting, or threaten to present disciplinary charges under these rules solely to obtain an advantage in a civil matter.

Comment
The procedure of the adversary system contemplates that the evidence in a case is to be marshalled competitively by the contending parties. Fair competition in the adversary system is secured by prohibitions against destruction or concealment of evidence, improperly influencing witnesses, obstructive tactics in discovery procedure, and the like.
Documents and other items of evidence are often essential to establish a claim or defense. Subject to evidentiary privileges, the right of an opposing party, including the government, to obtain evidence through discovery or subpoena is an important procedural right. The exercise of that right can be frustrated if relevant material is altered, concealed, or destroyed. Applicable law in many jurisdictions makes it an offense to destroy material for the purpose of impairing its availability in a pending proceeding or one whose commencement can be foreseen. Falsifying evidence is also generally a criminal offense. Subdivision (a) applies to evidentiary material generally, including computerized information.
With regard to subdivision (b), it is not improper to pay a witness's expenses or to compensate an expert witness on terms permitted by law. The common law rule in most jurisdictions is that it is improper to pay an occurrence witness any fee for testifying and that it is improper to pay an expert witness a contingent fee.
Subdivision (f) permits a lawyer to advise employees of a client to refrain from giving information to another party, for the employees may identify their interests with those of the client. See also rule 4-4.2.

RULE 4-5.1 RESPONSIBILITIES OF A PARTNER OR SUPERVISORY LAWYER
(a) Partners' Duties Concerning Adherence to Rules of Professional Conduct. A member of the bar who is a partner, proprietor, shareholder, member of a limited liability company, officer, director, or manager in an law firm authorized business entity, as defined elsewhere in these rules, or who has supervisory authority over another lawyer in the law department of an enterprise or government agency, shall make reasonable efforts to ensure that the firm authorized business entity, enterprise, or government agency has in effect measures giving reasonable assurance that all lawyers in the firm *1215 therein conform to the Rules of Professional Conduct.
(b) Supervisory Lawyer's Duties. Any lawyer in an authorized business entity, enterprise, or government agency having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the Rules of Professional Conduct.
(c) Responsibility for Rules Violations. A lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if:
(1) the lawyer orders the specific conduct or, with knowledge of the specific conduct thereof, ratifies the conduct involved; or
(2) the lawyer is a partner, proprietor, shareholder, member of a limited liability company, officer, director, partner, or manager in the law firm an authorized business entity, as defined elsewhere in these rules, in which the other lawyer practices, or has direct supervisory authority over the another lawyer in the law department of an enterprise or government agency, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

Comment
Subdivisions (a) and (b) refer to lawyers who have supervisory authority over the professional work of a firm or legal department of a government agency. This includes members of a partnership, proprietors, shareholders, members of a limited liability company, and the shareholders in a law firm organized as a professional corporation, as well as lawyers having supervisory authority in the law department of an enterprise or government agency, and lawyers who have intermediate managerial responsibilities in an firm authorized business entity.
The measures required to fulfill the responsibility prescribed in subdivisions (a) and (b) can depend on the firm's structure and the nature of its practice. In a small firm, informal supervision and occasional admonition ordinarily might be sufficient. In a large firm, or in practice situations in which intensely difficult ethical problems frequently arise, more elaborate procedures may be necessary. Some firms, for example, have a procedure whereby junior lawyers can make confidential referral of ethical problems directly to a designated senior partner supervising lawyer or special committee. See rule 4-5.2. Firms, whether large or small, may also rely on continuing legal education in professional ethics. In any event the ethical atmosphere of a firm can influence the conduct of all its members and a lawyer having authority over the work of another may not assume that the subordinate lawyer will inevitably conform to the rules.
Subdivision (c)(1) expresses a general principle of responsibility for acts of another. See also rule 4-8.4(a).
Subdivision (c)(2) defines the duty of a lawyer having direct supervisory authority over performance of specific legal work by another lawyer. Whether a lawyer has such supervisory authority in particular circumstances is a question of fact. Partners, proprietors, shareholders, members of a limited liability company, officers, directors, and managers of a private firm have at least indirect responsibility for all work being done by the firm, while a partner, shareholder, member of a limited liability company, officer, director, and manager in charge of a particular matter ordinarily has direct authority over other firm lawyers engaged in the matter. Appropriate remedial action by a partner would depend on the immediacy of the partner's, shareholder's, member's (of a limited liability company), officer's, director's, or manager's involvement and the seriousness of the misconduct. The supervisor is required to intervene to prevent avoidable consequences of misconduct if the supervisor knows that the misconduct occurred. Thus, if a supervising lawyer knows that a subordinate misrepresented a matter to an opposing party in negotiation, the supervisor as well as the subordinate has a duty to correct the resulting misapprehension.
Professional misconduct by a lawyer under supervision could reveal a violation of subdivision (b) on the part of the supervisory lawyer even though it does not entail a violation of subdivision (c) because there was no *1216 direction, ratification, or knowledge of the violation.
Apart from this rule and rule 4-8.4(a), a lawyer does not have disciplinary liability for the conduct of a partner, shareholder, member of a limited liability company, officer, director, manager, associate, or subordinate. Whether a lawyer may be liable civilly or criminally for another lawyer's conduct is a question of law beyond the scope of these rules.

4-6. PUBLIC SERVICE

RULE 4-6.1 PRO BONO PUBLIC SERVICE
(a) Professional Responsibility. Each member of The Florida Bar in good standing, as part of that member's professional responsibility, should (1) render pro bono legal services to the poor and (2) participate, to the extent possible, in other pro bono service activities that directly relate to the legal needs of the poor. This professional responsibility does not apply to members of the judiciary or their staffs or to government lawyers who are prohibited from performing legal services by constitutional, statutory, rule, or regulatory prohibitions. Neither does this professional responsibility apply to those members of the bar who are retired, inactive, or suspended, or who have been placed on the inactive list for incapacity not related to discipline.
(b) Discharge of the Professional Responsibility to Provide Pro Bono Legal Service to the Poor. The professional responsibility to provide pro bono legal services as established under this rule is aspirational rather than mandatory in nature. The failure to fulfill one's professional responsibility under this rule will not subject a lawyer to discipline. The professional responsibility to provide pro bono legal service to the poor may be discharged by:
(1) annually providing at least 20 hours of pro bono legal service to the poor; or
(2) making an annual contribution of at least $350 to a legal aid organization.
(c) Collective Discharge of the Professional Responsibility to Provide Pro Bono Legal Service to the Poor. Each member of the bar should strive to individually satisfy the member's professional responsibility to provide pro bono legal service to the poor. Collective satisfaction of this professional responsibility is permitted by law firms only under a collective satisfaction plan that has been filed previously with the circuit pro bono committee and only when providing pro bono legal service to the poor:
(1) in a major case or matter involving a substantial expenditure of time and resources; or
(2) through a full-time community or public service staff; or
(3) in any other manner that has been approved by the circuit pro bono committee in the circuit in which the firm practices.
(d) Reporting Requirement. Each member of the bar shall annually report whether the member has satisfied the member's professional responsibility to provide pro bono legal services to the poor. Each member shall report this information through a simplified reporting form that is made a part of the member's annual dues membership fees statement. The form will contain the following categories from which each member will be allowed to choose in reporting whether the member has provided pro bono legal services to the poor:
(1) I have personally provided _____ hours of pro bono legal services;
(2) I have provided pro bono legal services collectively by: (indicate type of case and manner in which service was provided);
(3) I have contributed $__________ to: (indicate organization to which funds were provided);
(4) I have provided legal services to the poor in the following special manner: (indicate manner in which services were provided); or
(5) I have been unable to provide pro bono legal services to the poor this year; or
(6) I am deferred from the provision of pro bono legal services to the poor because I am: (indicate whether lawyer is: a member of the judiciary or judicial staff; a government lawyer prohibited by statute, rule, or *1217 regulation from providing services; retired, or inactive).
The failure to report this information shall constitute a disciplinary offense under these rules.
(e) Credit Toward Professional Responsibility in Future Years. In the event that more than 20 hours of pro bono legal service to the poor are provided and reported in any 1 year, the hours in excess of 20 hours may be carried forward and reported as such for up to 2 succeeding years for the purpose of determining whether a lawyer has fulfilled the professional responsibility to provide pro bono legal service to the poor in those succeeding years.
(f) Out-of-State Members of the Bar. Out-of-state members of the bar may fulfill their professional responsibility in the states in which they practice or reside.

Comment
Pro bono legal service to the poor is an integral and particular part of a lawyer's pro bono public service responsibility. As our society has become one in which rights and responsibilities are increasingly defined in legal terms, access to legal services has become of critical importance. This is true for all people, be they rich, poor, or of moderate means. However, because the legal problems of the poor often involve areas of basic need, their inability to obtain legal services can have dire consequences. The vast unmet legal needs of the poor in Florida have been recognized by the Supreme Court of Florida and by several studies undertaken in Florida over the past two decades. The Supreme Court of Florida has further recognized the necessity of finding a solution to the problem of providing the poor greater access to legal service and the unique role of lawyers in our adversarial system of representing and defending persons against the actions and conduct of governmental entities, individuals, and nongovernmental entities. As an officer of the court, each member of The Florida Bar in good standing has a professional responsibility to provide pro bono legal service to the poor. Certain lawyers, however, are prohibited from performing legal services by constitutional, statutory, rule, or other regulatory prohibitions. Consequently, members of the judiciary and their staffs, government lawyers who are prohibited from performing legal services by constitutional, statutory, rule, or regulatory prohibitions, members of the bar who are retired, inactive, or suspended, or who have been placed on the inactive list for incapacity not related to discipline are deferred from participation in this program.
In discharging the professional responsibility to provide pro bono legal service to the poor, each lawyer should furnish a minimum of twenty hours of pro bono legal service to the poor annually or contribute $350 to a legal aid organization. "Pro bono legal service" means legal service rendered without charge or expectation of a fee for the lawyer at the time the service commences. Legal services written off as bad debts do not qualify as pro bono service. Most pro bono service should involve civil proceedings given that government must provide indigent representation in most criminal matters. Pro bono legal service to the poor is to be provided not only to those persons whose household incomes are below the federal poverty standard but also to those persons frequently referred to as the "working poor." Lawyers providing pro bono legal service on their own need not undertake an investigation to determine client eligibility. Rather, a good faith determination by the lawyer of client eligibility is sufficient. Pro bono legal service to the poor need not be provided only through legal services to individuals; it can also be provided through legal services to charitable, religious, or educational organizations whose overall mission and activities are designed predominantly to address the needs of the poor. For example, legal service to organizations such as a church, civic, or community service organizations relating to a project seeking to address the problems of the poor would qualify.
While the personal involvement of each lawyer in the provision of pro bono legal service to the poor is generally preferable, such personal involvement may not always be possible or produce the ultimate desired result, that is, a significant maximum increase in the quantity and quality of legal service *1218 provided to the poor. The annual contribution alternative recognizes a lawyer's professional responsibility to provide financial assistance to increase and improve the delivery of legal service to the poor when a lawyer cannot or decides not to provide legal service to the poor through the contribution of time. Also, there is no prohibition against a lawyer contributing a combination of hours and financial support. The limited provision allowing for collective satisfaction of the 20-hour standard recognizes the importance of encouraging law firms to undertake the pro bono legal representation of the poor in substantial, complex matters requiring significant expenditures of law firm resources and time and costs, such as class actions and post-conviction death penalty appeal cases, and through the establishment of full-time community or public service staffs. When a law firm uses collective satisfaction, the total hours of legal services provided in such substantial, complex matters or through a fulltime community or public service staff should be credited among the firm's lawyers in a fair and reasonable manner as determined by the firm.
The reporting requirement is designed to provide a sound basis for evaluating the results achieved by this rule, reveal the strengths and weaknesses of the pro bono plan, and to remind lawyers of their professional responsibility under this rule. The fourth alternative of the reporting requirements allows members to indicate that they have fulfilled their service in some manner not specifically envisioned by the plan.
The 20-hour standard for the provision of pro bono legal service to the poor is a minimum. Additional hours of service are to be encouraged. Many lawyers will, as they have before the adoption of this rule, contribute many more hours than the minimum. To ensure that a lawyer receives credit for the time required to handle a particularly involved matter, this rule provides that the lawyer may carry forward, over the next 2 successive years, any time expended in excess of 20 hours in any 1 year.

RULE 4-8.4 MISCONDUCT
A lawyer shall not:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;
(d) engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers on any basis, including, but not limited to, on account of race, ethnicity, gender, religion, national origin, disability, marital status, sexual orientation, age, socioeconomic status, employment, or physical characteristic;
(e) state or imply an ability to influence improperly a government agency or official;
(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law;
(g) fail to respond, in writing, to any official inquiry by a disciplinary agency, as defined elsewhere in these rules, when such agency is conducting an investigation into the lawyer's conduct;
(h) willfully refuse, as determined by a court of competent jurisdiction, to timely pay a child support obligation; or
(i) engage in sexual conduct with a client that exploits the lawyer-client relationship.

Comment
Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offense carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving "moral turpitude." That concept can be construed to include offenses concerning some matters of personal morality, such as adultery and comparable offenses, that have no specific connection to fitness for the practice of law. Although a lawyer is personally answerable *1219 to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, or breach of trust or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation.
A lawyer may refuse to comply with an obligation imposed by law upon a good faith belief that no valid obligation exists. The provisions of rule 4-1.2(d) concerning a good faith challenge to the validity, scope, meaning, or application of the law apply to challenges of legal regulation of the practice of law.
Subdivision (d) of this rule proscribes conduct that is prejudicial to the administration of justice. Such proscription includes the prohibition against discriminatory conduct committed by a lawyer while performing duties in connection with the practice of law. The proscription extends to any characteristic or status that is not relevant to the proof of any legal or factual issue in dispute. Such conduct, when directed towards litigants, jurors, witnesses, court personnel, or other lawyers, whether based on race, ethnicity, gender, religion, national origin, disability, marital status, sexual orientation, age, socioeconomic status, employment, physical characteristic, or any other basis, subverts the administration of justice and undermines the publics confidence in our system of justice, as well as notions of equality. This subdivision does not prohibit a lawyer from representing a client as may be permitted by applicable law, such as, by way of example, representing a client accused of committing discriminatory conduct.
Lawyers holding public office assume legal responsibilities going beyond those of other citizens. A lawyer's abuse of public office can suggest an inability to fulfill the professional role of attorney. The same is true of abuse of positions of private trust such as trustee, executor, administrator, guardian, or agent and officer, director, or manager of a corporation or other organization.
A lawyer's obligation to respond to an inquiry by a disciplinary agency is stated in subdivision (g) and rules 3-4.8 and 3-7.6(g)(2). While response is mandatory, the lawyer may deny the charges or assert any available privilege or immunity or interpose any disability that prevents disclosure of certain matter. A response containing a proper invocation thereof is sufficient under the Rules Regulating The Florida Bar. This obligation is necessary to ensure the proper and efficient operation of the disciplinary system.
Subdivision (h) of this rule was added to make consistent the treatment of attorneys who fail to pay child support with the treatment of other professionals who fail to pay child support, in accordance with the provisions of section 61.13015, Florida Statutes (1993). That section provides for the suspension or denial of a professional license due to delinquent child support payments after all other available remedies for the collection of child support have been exhausted. Likewise, subdivision (h) of this rule should not be used as the primary means for collecting child support, but should be used only after all other available remedies for the collection of child support have been exhausted. Before a grievance may be filed or a grievance procedure initiated under this subdivision, the court that entered the child support order must first make a finding of willful refusal to pay. The child support obligation at issue under this rule includes both domestic (Florida) and out-of-state (URESA) child support obligations, as well as arrearages.
Subdivision (i) proscribes exploitation of the client and the lawyer-client relationship by means of commencement of sexual conduct. The lawyer-client relationship is grounded on mutual trust. A sexual relationship that exploits that trust compromises the lawyer-client relationship. A sexual relationship between a lawyer and a client that exists before commencement of the lawyer-client relationship does not violate this subdivision if the lawyer and client continue to engage in sexual conduct during the legal representation. For purposes of this subdivision, client means an individual, not a corporate *1220 or other non-personal entity, and lawyer refers only to the lawyer(s) engaged in the legal representation and not other members of the law firm.

RULE 4-8.6 AUTHORIZED BUSINESS ENTITIES
(a) Authorized Business Entities. Lawyers may practice law in the form of professional service corporations, professional limited liability companies, or registered limited liability partnerships organized or qualified under applicable law. A professional service corporation, a professional limited liability company, or a registered limited liability partnership is an authorized business entity under these rules.
(b) Practice of Law Limited to Members of The Florida Bar. No authorized business entity may engage in the practice of law in the state of Florida or render advice under or interpretations of Florida law except through officers, directors, partners, managers, agents, or employees who are qualified to render legal services in this state.
(c) Qualifications of Managers, Directors and Officers. No person shall serve as a partner, manager, director or executive officer of an authorized business entity and engage in the practice of law in Florida unless such person is legally qualified to render legal services in this state. For purposes of this rule the term "executive officer" shall include the president, vice-president, or any other officer who performs a policy-making function.
(d) Violation of Statute or Rule. A lawyer who, while acting as a shareholder, member, officer, director, partner, manager, agent, or employee of an authorized business entity and engaged in the practice of law in Florida, violates or sanctions the violation of the authorized business entity statutes or the Rules Regulating The Florida Bar shall be subject to disciplinary action.
(e) Disqualification of Shareholder, Member, or Partner; Severance of Financial Interests. Whenever a shareholder of a professional service corporation, a member of a professional limited liability company or partner in a registered limited liability partnership becomes legally disqualified to render legal services in this state, said shareholder, member, or partner shall sever all employment with and financial interests in such authorized business entity immediately. For purposes of this rule the term "legally disqualified" shall not include suspension from the practice of law for a period of time less than 91 days. Severance of employment and financial interests required by this rule shall not preclude the shareholder, member, or partner from receiving compensation based on legal fees generated for legal services performed during the time when the shareholder, member, or partner was legally qualified to render legal services in this state. This provision shall not prohibit employment of a legally disqualified shareholder, member, or partner in a position that does not render legal service nor payment to an existing profit sharing or pension plan to the extent permitted in rule 4-5.4(a)(3), or as required by applicable law.
(f) Cessation of Legal Services. Whenever all shareholders of a professional service corporation, or all members of a professional limited liability company, or all partners in a registered limited liability partnership become legally disqualified to render legal services in this state, the authorized business entity shall cease the rendition of legal services in Florida.
(g) Application of Statutory Provisions. Unless otherwise provided in this rule, each shareholder, member, or partner of an authorized business entity shall possess all rights and benefits and shall be subject to all duties applicable to such shareholder, member, or partner provided by the statutes pursuant to which the authorized business entity was organized or qualified.

Comment
In 1961 this court recognized the authority of the legislature to enact statutory provisions creating corporations, particularly professional service corporations. But this court also noted that "[e]nabling action by this Court is therefore an essential condition precedent to authorize members of The Florida Bar to qualify under and engage in the practice of their profession pursuant to The 1961 *1221 Act." In re The Florida Bar, 133 So.2d 554, at 555 (Fla.1961).
The same is true today, whatever the form of business entity created by legislative enactment. Hence, this rule is adopted to continue authorization for members of the bar to practice law in the form of a professional service corporation, a professional limited liability company, or a registered limited liability partnership. These type of entities are collectively referred to as authorized business entities. This rule does not preclude any member of the bar from practicing law as a sole proprietor or as a member of a general partnership.

Limitation on rendering legal services
No person may render legal services on behalf of an authorized business entity unless that person is otherwise authorized to do so via membership in the bar or through a motion for leave to appear (pro hac vice). Neither the adoption of this rule nor the statutory provisions alter this limitation.

Employment by and financial interests in a professional service corporation
This rule and the statute require termination of employment of a shareholder, member, or partner when same is "legally disqualified" to render legal services. The purpose of this provision is to prohibit compensation based on fees for legal services rendered at a time when the shareholder, member, or partner cannot render the same type of services. Continued engagement in capacities other than rendering legal services with the same or similar compensation would allow circumvention of prohibitions of sharing legal fees with one not qualified to render legal services. Other rules prohibit the sharing of legal fees with nonlawyers and this rule continues the application of that type of prohibition. However, nothing in this rule or the statute prohibits payment to the disqualified shareholder, member, or partner for legal services rendered while the shareholder, member, or partner was qualified to render same, even though payment for the legal services is not received until the shareholder, member, or partner is legally disqualified.
Similarly, this rule and the statute require the severance of "financial interests" of a legally disqualified shareholder, member, or partner. The same reasons apply to severance of financial interests as those that apply to severance of employment.
Practical application of the statute and this rule to the requirements of the practice of law mandates exclusion of short term, temporary removal of qualifications to render legal services. Hence, any suspension of less than 91 days, including dues membership fees delinquency suspensions, is excluded from the definition of the term. These temporary impediments to the practice of law are such that with the passage of time or the completion of ministerial acts, the member of the bar is automatically qualified to render legal services. Severe tax consequences would result from forced severance and subsequent reestablishment (upon reinstatement of qualifications) of all financial interests in these instances.
However, the exclusion of such suspensions from the definition of the term does not authorize the payment to the disqualified shareholder, member, or partner of compensation based on fees for legal services rendered during the time when the shareholder, member, or partner is not personally qualified to render such services. Continuing the employment of a legally disqualified shareholder, member, or partner during the term of a suspension of less than 91 days requires the authorized business entity to take steps to avoid the practice of law by the legally disqualified shareholder, member, or partner, the ability of the legally disqualified shareholder, member, or partner to control the actions of members of the bar qualified to render legal services, and payment of compensation to the legally disqualified shareholder, member, or partner based on legal services rendered while the legally disqualified shareholder, member, or partner is not qualified to render them. Mere characterization of continued compensation, which is the same or similar to that the legally disqualified shareholder, member, or partner received when qualified to render legal services, is not sufficient to satisfy the requirements of this rule.

*1222 Profit sharing or pension plans
To the extent that applicable law requires continued payment to existing profit sharing or pension plans, nothing in this rule or the statute may abridge such payments. However, if permitted under applicable law the amount paid to the plan for a legally disqualified shareholder, member, or partner shall not include payments based on legal services rendered while the legally disqualified shareholder, member, or partner was not qualified to render legal services.

Interstate Practice
This rule permits members of The Florida Bar to engage in the practice of law with lawyers licensed to practice elsewhere in an authorized business entity organized under the laws of another jurisdiction and qualified under the laws of Florida (or vice-versa), but nothing herein is intended to affect the ability of non-members of The Florida Bar to practice law in Florida. See, e.g., The Florida Bar v. Savitt, 363 So.2d 559 (Fla.1978).
The terms qualified and legally disqualified are imported from the Professional Service Corporation Act (Chapter 621, Florida Statutes).

RULE 6-1.2 PUBLIC NOTICE
The Florida Bar may cause a public notice to be promulgated where and when it deems necessary, including, for example, telephone directory yellow pages, in substantially the following form:

NOTICE

FOR THE GENERAL INFORMATION OF THE PUBLIC
ATTORNEYS INDICATING "BOARD CERTIFIED" OR "SPECIALIST" HAVE BEEN CERTIFIED BY THE FLORIDA BAR AS HAVING SPECIAL KNOWLEDGE, SKILLS, AND PROFICIENCY IN THEIR AREAS OF PRACTICE.
ALL PERSONS ARE URGED TO MAKE THEIR OWN INDEPENDENT INVESTIGATION AND EVALUATION OF ANY ATTORNEY BEING CONSIDERED.
This notice published by The Florida Bar Board of Legal Specialization and Education, Telephone 904 850/561-5600, 650 Apalachee Parkway, Tallahassee, Florida XXXXX-XXXX.

RULE 6-3.5 STANDARDS FOR CERTIFICATION
(a) Standards for Certification. The minimum standards for certification are prescribed below. Each area of certification established under this chapter may contain higher or additional standards if approved by the Supreme Court of Florida.
(b) Eligibility for Application. A member in good standing of The Florida Bar who is currently engaged in the full-time practice of law and who meets the area's standards may apply for certification. From the date the application is filed to the date the certificate is issued, the applicant must continue to practice law full-time and remain a member in good standing of The Florida Bar. The certificate issued by the board of legal specialization and education shall state that the lawyer is a "Board Certified (area of certification) Lawyer."
(c) Minimum Requirements for Qualifying for Certification With Examination. Minimum requirements for qualifying for certification by examination are as follows:
(1) A minimum of 5 years substantially engaged in the practice of law on a full-time basis. The "practice of law" means full-time legal work performed primarily for purposes of rendering legal advice or representation. Service as a judge of any court of record shall be deemed to constitute the practice of law. Employment by the government of the United States, any state (including subdivisions of the state such as counties or municipalities), or the District of Columbia, and employment by a public or private corporation or other business shall be deemed to constitute the practice of law if the individual was required as a condition of employment to be a member of the bar of any state or the District of Columbia.
(2) A satisfactory showing of substantial involvement in the particular area for which certification is sought during 3 of the last 5 *1223 years preceding the application for certification.
(3) A satisfactory showing of such continuing legal education in a particular field of law for which certification is sought as set by that area's standards but in no event less than 10 certification hours per year.
(4) Passing a written and/or oral examination applied uniformly to all applicants to demonstrate sufficient knowledge, skills, and proficiency in the area for which certification is sought and in the various areas relating to such field. The award of an LL.M. degree from an approved law school in the area for which certification is sought within 8 years of application may substitute as the written examination required in this subdivision if the area's standards so provide.
(5) Current certification by an approved organization in the area for which certification is sought within 5 years of filing an application may, at the option of the certification committee, substitute as partial equivalent credit, including the written examination required in subdivision (c)(4). Approval will be by the board of legal specialization and education following a positive or negative recommendation from the certification committee.
(6) Peer review shall be used to solicit information to determine that assess competence in the specialty field and professionalism and ethics in the practice of law. To qualify for board certification, an applicant for certification has must be recognized as having achieved recognition as having a level of competence indicating proficient performance special knowledge, skills, and proficiency in handling the usual matters in the speciality field. The applicant shall also be evaluated as to character, ethics, and reputation for professionalism. An applicant otherwise qualified for certification may be determined unqualified denied certification on the basis of peer review. Certification may also be withheld pending the outcome of any disciplinary complaint or malpractice action.
Peer review shall be mandatory for all applicants and may not be eliminated by equivalents. Such peer review shall solicit, from persons familiar with the applicant, as much information as is reasonably necessary to accurately assess the applicant's competence, performance, and reputation. This procedure may include solicitation of public input and independent inquiry apart from written references.
As part of the peer review process, the board of legal specialization and education and its area committees shall review an applicant's professional professionalism, ethics, and disciplinary record. Such review shall include both disciplinary complaints and malpractice actions.against an applicant. An applicant otherwise qualified may be denied certification on the basis of this record. Certification may also be withheld pending the outcome of the disciplinary complaint or malpractice action. The process may also include solicitation of public input and independent inquiry apart from written references. Peer review is mandatory for all applicants and may not be eliminated by equivalents.
(d) Minimum Requirements for Qualification Without Examination. When certification without examination is available in an area, the minimum requirements for such certification are as follows:
(1) A minimum of 20 years in the practice on a full-time basis.
(2) A satisfactory showing of competence and substantial involvement in the particular area for which certification is sought during 5 of the last 10 years, including the year immediately preceding the application for certification. Substantial involvement in the practice of law for the 1 year immediately preceding the application may be waived for good cause shown.
(3) A satisfactory showing of such continuing legal education in a particular field of law for which certification is sought as set by that area's standards but in no event less than 15 hours per year.
(4) Satisfactory peer review and professional ethics record in accordance with subdivision (c)(6).
(5) Certification without examination may be granted only to individuals who apply within 2 years after the date on which the *1224 particular area is approved by the Supreme Court of Florida.
(6) Payment of any fees required by the plan.

RULE 7-2.3 PAYMENTS
(a) Payment is Discretionary. If, in the judgment of the board, a reimbursable loss has been sustained by an applicant and the circumstances warrant relief, then, after taking into consideration the resources of the fund and the priority to be assigned to such application, the board may, in the exercise of its discretion, as a matter of grace and not of right, grant monetary relief.
(b) Determination of Amount and Manner of Payment. Such monetary relief shall be in such an amount as the board may determine and shall be payable in such a manner and upon such conditions and terms as the board shall prescribe.
(c) No Right to Payment. No applicant shall have any right, legal or equitable, contractual or statutory, to a grant of monetary relief from the fund, and neither a determination by the board to pay any portion or all of any claim, nor partial payment, shall vest any such right in the applicant.
(d) Barred Losses. The board shall not grant any application for monetary relief unless it shall be based upon a loss sustained after December 31, 1966.

RULE 7-2.4 PREREQUISITES TO PAYMENT
(a) Members in Good Standing. Payments from the fund will not ordinarily be made while the lawyer guilty of the misappropriation remains a member in good standing of The Florida Bar.
(b) Complaints Required. The filing of a grievance complaint with The Florida Bar against the attorney claimed against may be required as a prerequisite to the consideration of a cClients' sSecurity fFund claim.

RULE 7-3.2 DUES MEMBERSHIP FEES ALLOCATION
The board shall allocate from the annual dues membership fees of the members of The Florida Bar not more than $15 per member for this purpose.

10-4. CIRCUIT COMMITTEES

RULE 10-4.1 GENERALLY
(a) Appointment and Terms. Each circuit committee shall be appointed by the court on advice of the board of governors and shall consist of not fewer than 3 members, at least one-third of whom shall be nonlawyers. Three members of the circuit committee or a majority of the members, whichever is less, shall constitute a quorum. All appointees shall be residents of the circuit or have their principal office in the circuit. The terms of the members of circuit committees shall be for 1 year from the date of appointment by the court or until such time as their successors are appointed and qualified. Continuous service of a member shall not exceed 3 years. A member shall not be reappointed for a period of 3 years after the end of the member's third term provided, however, the expiration of the term of any member shall not disqualify that member from concluding any investigations pending before that member. Any member of a circuit committee may be removed from office by the board of governors.
(b) Committee Chair. For each circuit committee there shall be a chair designated by the board of governors. A vice-chair and secretary may be designated by the chair of each circuit committee. The chair shall be a member of The Florida Bar.
(c) Quorum. Three members of the circuit committee or a majority of the members, whichever is less, shall constitute a quorum.
(d) Panels. The circuit committee may be divided into panels of not fewer than 3 members, 1 of whom must be a nonlawyer. Division of the circuit committee into panels shall only be upon concurrence of the designated reviewer and the chair of the circuit committee. The 3-member panel shall elect 1 of its members to preside over the panel's actions. If the chair or vice-chair of the circuit committee is a member of a 3-member panel, the chair or vice-chair shall be the presiding officer.
(c) (e) Duties. It shall be the duty of each circuit committee to investigate, with dispatch, all reports of unlicensed practice of law and to make prompt written report of its *1225 investigation and findings to UPL staff counsel. In addition, the duties of the circuit committee shall include, but not be limited to:
(1) closing cases not deemed by the circuit committee to warrant further action by The Florida Bar;
(2) closing cases proposed to be resolved by cease and desist affidavit; and
(3) forwarding to UPL staff counsel recommendations for litigation to be reviewed by the standing committee.
(d) (f) Circuit Committee Meetings. Circuit committees should meet at regularly scheduled times, not less frequently than quarterly each year. Either the chair or vice chair may call special meetings. Circuit committees should meet at least monthly during any period when the committee has 1 or more pending cases assigned for investigation and report. The time, date and place of regular monthly meetings should be set in advance by agreement between each committee and UPL staff counsel.

10-7. PROCEEDINGS BEFORE A REFEREE

RULE 10-7.1 PROCEEDINGS FOR INJUNCTIVE RELIEF
(a) Filing Complaints. Complaints for civil injunctive relief shall be by petition filed in the Supreme Court of Florida by The Florida Bar in its name.
(b) Petitions for Injunctive Relief. Each such petition shall be processed in the Supreme Court of Florida in accordance with the following procedure:
(1) The petition shall not be framed in technical language but shall with reasonable clarity set forth the facts constituting the unlicensed practice of law. A demand for relief may be included in the petition but shall not be required.
(2) The court, upon consideration of any petition so filed, may issue its order to show cause directed to the respondent commanding the respondent to show cause, if there be any, why the respondent should not be enjoined from the unlicensed practice of law alleged, and further requiring the respondent to file with the court and serve upon UPL staff counsel within 20 days after service on the respondent of the petition and order to show cause a written answer admitting or denying each of the matters set forth in the petition. The legal sufficiency of the petition may, at the option of the respondent, be raised by motion to dismiss filed prior to or at the time of the filing of the answer. The filing of a motion to dismiss prior to the filing of an answer shall postpone the time for the filing of an answer until 10 days after disposition of the motion. The order and petition shall be served upon the respondent in the manner provided for service of process by Florida Rule of Civil Procedure 1.070(b). Service of all other pleadings shall be governed by the provisions of Florida Rule of Civil Procedure 1.080.
(3) Any party may request oral argument upon any question of law raised by the initial pleadings. The court may, in its discretion, set the matter for oral argument upon the next convenient motion day or at such time as it deems appropriate.
(4) If no response or defense is filed within the time permitted, the allegations of the petition shall be taken as true for purposes of that action. The court will then, upon its motion or upon motion of any party, decide the case upon its merits, granting such relief and issuing such order as might be appropriate; or it may refer the petition for further proceedings according to rule 10-7.1(b)(6).
(5) If a response or defense filed by a respondent raises no issue of material fact, any party, upon motion, may request summary judgment and the court may rule thereon as a matter of law.
(6) The court may, upon its motion or upon motion of any party, enter a judgment on the pleadings or refer questions of fact to a referee for determination.
(c) Proceedings Before the Referee. Proceedings before the referee shall be in accordance with the following:
(1) The proceedings shall be held in the county where the respondent resides or where the alleged offense was committed, whichever shall be designated by the court.
*1226 (2) Subpoenas for the attendance of witnesses and the production of documentary evidence shall be issued in the name of the court by the referee upon request of a party. Failure or refusal to comply with any subpoena shall be contempt of court and may be punished by the court or by any circuit court where the action is pending or where the contemnor may be found, as if said refusal were a contempt of that court.
(3) The Florida Rules of Civil Procedure, including those provisions pertaining to discovery, not inconsistent with these rules shall apply in injunctive proceedings before the referee. The powers and jurisdiction generally reposed in the court under those rules may in this action be exercised by the referee. The Florida Bar may in every case amend its petition 1 time as of right, within 60 days after the filing of the order referring the matter to a referee.
(4) Review of interlocutory rulings of the referee may be had by petition to the court filed within 30 days after entry of the ruling complained of. A supporting brief or memorandum of law and a transcript containing conformed copies of pertinent portions of the record in the form of an appendix shall be filed with the court by a party seeking such review. Any opposing party may file a responsive brief or memorandum of law and appendix containing any additional portions of the record deemed pertinent to the issues raised within 10 days thereafter. The petitioner may file a reply brief or memorandum of law within 5 days of the date of service of the opposing party's responsive brief or memorandum of law. Any party may request oral argument at the time that party's brief or memorandum of law is filed or due. Interlocutory review hereunder shall not stay the cause before the referee unless the referee or the court on its motion or on motion of any party shall so order.
(d) Referee's Report.
(1) At the conclusion of the hearing, the referee shall file a written report with the court stating findings of fact, conclusions of law, a statement of costs incurred and recommendations as to the manner in which costs should be taxed as provided in rule 10-7.1(d)(2), and a recommendation for final disposition of the cause. The original record shall be filed with the report. Copies of the referee's report shall be served upon all parties by the referee at the time it is filed with the court.
(2) The referee shall have discretion to recommend the assessment of costs. Taxable costs of the proceeding shall include only:
(A) investigative costs;
(B) court reporters' fees;
(C) copy costs;
(D) telephone charges;
(E) fees for translation services;
(F) witness expenses, including travel and out-of-pocket expenses;
(G) travel and out-of-pocket expenses of the referee; and
(H) any other costs which may properly be taxed in civil litigation.
(3) Should the parties enter into a stipulated injunction prior to the hearing, the stipulation shall be filed with the referee. The referee may approve the stipulation or reject the stipulation and schedule a hearing as provided elsewhere in these rules. If accepted, the stipulation and original record shall then be filed with the court for final approval of the stipulation and entry of an injunction. A written report as described in rule 10-7.1(d)(1) shall be filed by the referee along with the stipulation.
(e) Review by the Supreme Court of Florida.
(1) Objections to the report of the referee shall be filed with the court by any party aggrieved, within 30 days after the filing of the report. If the objector desires, a brief or memorandum of law in support of the objections may be filed at the time the objections are filed. Any other party may file a responsive brief or memorandum of law within 20 days of service of the objector's brief or memorandum of law. The objector may file a reply brief or memorandum of law within 10 days of service of the opposing party's responsive brief or memorandum of law. *1227 Oral argument will be allowed at the court's discretion and will be governed by the provisions of the Florida Rules of Appellate Procedure.
(2) Upon the expiration of the time to file objections to the referee's report, the court shall review the report of the referee, together with any briefs or memoranda of law or objections filed in support of or opposition to such report. After review, the court shall determine as a matter of law whether the respondent has engaged in the unlicensed practice of law, whether the respondent's activities should be enjoined by appropriate order, whether costs should be awarded, and whether further relief shall be granted.
(f) Issuance of Preliminary or Temporary Injunction.
Nothing set forth in this rule shall be construed to limit the authority of the court, upon proper application, to issue a preliminary or temporary injunction, or at any stage of the proceedings to enter any such order as the court deems proper when public harm or the possibility thereof is made apparent to the court, in order that such harm may be summarily prevented or speedily enjoined.

RULE 10-7.2 PROCEEDINGS FOR INDIRECT CRIMINAL CONTEMPT
(a) Petitions for Indirect Criminal Contempt. Nothing set forth herein shall be construed to prohibit or limit the right of the court to issue a permanent injunction in lieu of or in addition to any punishment imposed for an indirect criminal contempt.
(1) Upon receiving a sworn petition of the president of The Florida Bar, or the chair of the standing committee, alleging facts indicating that a person, firm, or corporation is or may be unlawfully practicing law, and containing a prayer for a contempt citation, the court may issue an order directed to the respondent, stating the essential allegations charged and requiring the respondent to appear before a referee appointed by the court to show cause why the respondent should not be held in contempt of this court for the unlicensed practice of law. The referee shall be a circuit judge of the state of Florida. The order shall specify the time and place of the hearing, and a reasonable time shall be allowed for preparation of the defense after service of the order on the respondent.
(2) The respondent, personally or by counsel, may move to dismiss the order to show cause, move for a statement of particulars, or answer such order by way of explanation or defense. All motions and the answer shall be in writing. A respondent's omission to file motions or answer shall not be deemed as an admission of guilt of the contempt charged.
(b) Indigency of Respondent. Any respondent who is determined to be indigent by the referee shall be entitled to the appointment of counsel. In proceedings for the determination of indigency the referee shall determine whether any of the following facts exist, and the existence of any such fact shall create a presumption that the respondent is not indigent:
(1) if the respondent has been released on bail in the amount of $5,000 or more;
(2) if the respondent has no dependents and has gross income that exceeds $100 per week (the income limit shall be increased by $20 per week for each of the first two 2 dependents of the respondent and by $10 per week for each dependent beyond the first two 2); or
(3) if the respondent owns cash in excess of $500.
In determining indigency, the court shall also consider: the probable expense and burden of defending the case; the ownership of, or equity in, any tangible or intangible personal property or real property, or the expectancy of an interest in any such property by the respondent; and the amount of debts owed by the respondent or debts that might be incurred by the respondent because of family illness or other family misfortunes.
(c) Proceedings Before the Referee. Proceedings before the referee shall be in accordance with the following:
(1) Venue for the hearing before the referee shall be in the county where the respondent resides or where the alleged offense was *1228 committed, whichever shall be designated by the court.
(2) The court or referee may issue an order of arrest of the respondent if the court or referee has reason to believe the respondent will not appear in response to the order to show cause. The respondent shall be admitted to bail in the manner provided by law in criminal cases.
(3) The respondent shall be arraigned at the time of the hearing before the referee, or prior thereto upon request. A hearing to determine the guilt or innocence of the respondent shall follow a plea of not guilty. The respondent is entitled to be represented by counsel, have compulsory process for the attendance of witnesses, and confront witnesses against the respondent. The respondent may testify in the respondent's own defense. No respondent may be compelled to testify. A presumption of innocence shall be accorded the respondent. The Florida Bar, which shall act as prosecuting authority, must prove guilt of the respondent beyond a reasonable doubt.
(4) The referee shall hear all issues of law and fact and all evidence and testimony presented shall be transcribed.
(5) At the conclusion of the hearing, the referee shall sign and enter of record a judgment of guilty or not guilty. There should be included in a judgment of guilty a recital of the facts constituting the contempt of which the respondent has been found and adjudicated guilty, and the costs of prosecution, including investigative costs, shall be included and entered in the judgment rendered against the respondent.
(6) Prior to the pronouncement of a recommended sentence upon a judgment of guilty, the referee shall inform the respondent of the accusation and judgment and afford the opportunity to present evidence of mitigating circumstances. The recommended sentence shall be pronounced in open court and in the presence of the respondent.
(d) Review by the Supreme Court of Florida. The judgment and recommended sentence, upon a finding of "guilty," together with the entire record of proceedings shall then be forwarded to this court for approval, modification, or rejection based upon the law. The respondent may file objections, together with a supporting brief or memorandum of law, to the referee's judgment and recommended sentence within 30 days of the date of filing with the court of the referee's judgment, recommended sentence, and record of proceedings. The Florida Bar may file a responsive brief or memorandum of law within 10 20 days after service of respondent's brief or memorandum of law. The respondent may file a reply brief or memorandum of law within 5 10 days after service of The Florida Bar's responsive brief or memorandum of law.
(e) Fine or Punishment. The punishment for an indirect criminal contempt under this chapter shall be by fine, not to exceed $500.00, imprisonment of up to 5 months, or both.
(f) Costs. The court may also award costs.

10-8. CONFIDENTIALITY

RULE 10-8.1 FILES
(a) Files Are Property of Bar. All matters, including files, preliminary investigation reports, interoffice memoranda, records of investigations, and the records in trials and other proceedings under these rules, except those unlicensed practice of law matters conducted in county or circuit courts, are property of The Florida Bar. All of those matters shall be confidential and shall not be disclosed except as provided in these rules. When disclosure is permitted under these rules, it shall be limited to information concerning the status of the proceedings and any information that is part of the UPL record as defined in these rules.
(b) UPL Record. The UPL record shall consist of the record before a circuit committee, the record before a referee, the record before the Supreme Court of Florida, and any reports, correspondence, papers, and recordings and transcripts of hearings furnished to, served on, or received from the respondent or the complainant. The record before the circuit committee shall consist of all reports, correspondence, papers, and recordings *1229 furnished to or received from the respondent and the transcript of circuit committee meetings or hearings, if the proceedings were attended by a court reporter; provided, however, that the committee may retire into private session to debate the issues involved and to reach a decision as to the action to be taken. The record before a referee and the record before the Supreme Court of Florida shall include all items properly filed in the cause including pleadings, transcripts of testimony, exhibits in evidence, and the report of the referee.
(c) Limitations on Disclosure. Any material provided to or promulgated by The Florida Bar that is confidential under applicable law shall remain confidential and shall not be disclosed except as authorized by the applicable law. If this type of material is made a part of the UPL record, that portion of the UPL record may be sealed by the circuit committee chair, the referee, or the court.
(d) Disclosure of Information. Unless otherwise ordered by this court or the referee in proceedings under this rule, nothing in these rules shall prohibit the complainant, respondent, or any witness from disclosing the existence of proceedings under these rules or from disclosing any documents or correspondence served on or provided to those persons.
(e) Response to Inquiry. Representatives of The Florida Bar, authorized by the board of governors, shall reply to inquiries regarding a pending or closed unlicensed practice of law investigation as follows:
(1) Cases Opened Prior To November 1, 1992. Cases opened prior to November 1, 1992, shall remain confidential.
(2) Cases Opened On or After November 1, 1992. In any case opened on or after November 1, 1992, the fact that an unlicensed practice of law investigation is pending and the status of the investigation shall be public information; however, the UPL record shall remain confidential except as provided in rule 10-8.1(e)(4).
(3) Recommendations of Circuit Committee. The recommendation of the circuit committee as to the disposition of an investigation opened on or after November 1, 1992, shall be public information; however, the UPL record shall remain confidential except as provided in rule 10-8.1(e)(4).
(4) Final Action by Circuit Committee, Standing Committee and UPL Staff Counsel. The final action on investigations opened on or after November 1, 1992, shall be public information. The UPL record in cases opened on or after November 1, 1992, that are closed by the circuit committee, the standing committee, or UPL staff counsel as provided elsewhere in these rules, cases where a cease and desist affidavit has been accepted, and cases where a litigation recommendation has been approved shall be public information and may be provided upon specific inquiry except that information that remains confidential under rule 10-8.1(c). The Florida Bar may charge a reasonable fee for identification of and photocopying the documents.
(f) Production of UPL Records Pursuant to Subpoena. The Florida Bar, pursuant to a valid subpoena issued by a regulatory agency, may provide any documents that are a portion of the UPL record even if otherwise deemed confidential under these rules. The Florida Bar may charge a reasonable fee for identification of and photocopying the documents.
(g) Notice to Judges. Any judge of a court of record may be advised as to the status of a confidential unlicensed practice of law case and may be provided with a copy of the UPL record. The judge shall maintain the confidentiality of the matter.
(h) Response to False or Misleading Statements. If public statements that are false and misleading are made about any UPL case, The Florida Bar may make any disclosure necessary to correct such false or misleading statements.
(i) Providing Otherwise Confidential Material. Nothing contained herein shall prohibit The Florida Bar from providing otherwise confidential material as provided in rule 10-3.2(f) (e).

*1230 RULE 16-1.4 CERTIFICATION
(a) Commencement of Permission to Perform Services. Permission for a foreign legal consultant to render legal services under this chapter shall become effective upon the filing of an application and certification, with respect to an applicant, by the International Law Section of The Florida Bar, of the requirements of rules 16-1.2(a) through (j) and 16-1.3(a) and (b) herein. In addition to any other evidence that The Florida Bar, in its discretion, may require, the application shall include the filing and approval of:
(1) a duly authenticated certificate from the entity governing the practice of law in the foreign country in which the applicant is licensed to practice, which shall be accompanied by the official seal, if any, of such entity, and which shall certify:
(A) the entity's jurisdiction in such matters;
(B) the applicant's admission to practice in such foreign country and the date thereof;
(C) the applicant's good standing as an attorney, counselor at law, or the equivalent; and
(D) whether any charge or complaint has ever been filed against the applicant with such entity, and if so, the substance of each such charge or complaint and the adjudication or disposition thereof;
(2) a letter of recommendation signed by and with the official seal, if any, of 1 of the members of the executive body of such entity or from 1 of the judges of the highest court of law of such foreign country, certifying to the applicant's professional qualifications;
(3) a letter of recommendation from at least 2 attorneys, counselors at law, or the equivalent admitted in and practicing in such foreign country, setting forth the length of time, when, and under what circumstances they have known the applicant and their appraisal of the applicant's moral character;
(4) a letter of recommendation from at least 2 members in good standing of The Florida Bar, setting forth the length of time, when, and under what circumstances they have known the applicant and their appraisal of the applicant's moral character;
(5) a sworn statement by the applicant that the applicant:
(A) has read and is familiar with the Rules of Professional Conduct as adopted by the Supreme Court of Florida and will abide by, and be subject to, the provisions thereof;
(B) submits to the jurisdiction of the Supreme Court of Florida for disciplinary purposes, as defined in chapter 3 of these rules and rule 16-1.6. The statement by the applicant must also authorize notification to the entity governing the practice of law in the foreign country in which the applicant is licensed to practice of any disciplinary action taken against the applicant in Florida; and
(C) shall comply with the requirements of rule 16-1.3(b) regarding disclosure;
(6) a written commitment to notify the court of any resignation or revocation of the foreign legal consultant's admission to practice in the foreign country of admission, or in any other state or jurisdiction in which said consultant has been licensed as an attorney, counselor at law, or equivalent or as a foreign legal consultant, or of any censure, suspension, or expulsion in respect of such admission; and
(7) a duly acknowledged instrument setting forth the applicant's address within the state of Florida and designating the secretary of state as such person's agent upon whom process may be served, pursuant to applicable Florida law, with like effect as if served personally upon such applicant, in any action or proceeding thereafter brought against the applicant arising out of or based upon any legal services rendered or offered to be rendered by such applicant within or to the residents of the state of Florida, whenever after due diligence service cannot be made upon such applicant at such address.
(b) Annual Sworn Statement. A person certified under this chapter as a foreign legal consultant shall submit to The Florida Bar, on an annual basis, a sworn statement attesting to the foreign legal consultant's good standing as an attorney, counselor at law, or the equivalent in the foreign country in which such person is licensed to practice and shall *1231 also include with such statement an annual renewal fee equivalent to annual dues membership fees paid by members of The Florida Bar, in good standing, and such other evidence as The Florida Bar shall deem necessary to determine the continuing qualifications of the foreign legal consultant under this chapter.

RULE 17-1.5 TERMINATION OR WITHDRAWAL OF REGISTRATION
(a) Cessation of Authorization to Perform Services.
Authorization to perform services under this rule shall cease upon the earliest of the following events:
(1) the termination or resignation of employment with the business organization for which registration has been filed, provided, however, that if the authorized house counsel shall commence employment with another business organization within 30 days of the termination or resignation, authorization to perform services under this rule shall continue upon the filing with The Florida Bar of a certificate as set forth in subdivision 17-1.4(a)(3);
(2) the withdrawal of registration by the business organization;
(3) the withdrawal of registration by the authorized house counsel;
(4) the relocation of an authorized house counsel outside of Florida for a period greater than 180 days; or
(5) disbarment or suspension from the practice of law by a court or other authorized disciplinary agency of another state or by a federal court; or
(5) (6) the failure of authorized house counsel to comply with any applicable provision of this rule.
Notice of one of the events set forth in subdivision 17-1.5(a)(1)(4) (5) or a new certificate as provided in subdivision 17-1.5(a)(1) must be filed with The Florida Bar by the authorized house counsel within 30 days after such action. Failure to provide such notice by the authorized house counsel shall be a basis for discipline pursuant to the Rules Regulating The Florida Bar.
(b) Notice of Withdrawal of Authorization. Upon receipt of the notice required by subdivision 17-1.5(a), The Florida Bar shall forward a request to the clerk of the Supreme Court of Florida that the authorization under this chapter be revoked. Notice of the revocation shall be mailed by the clerk of the Supreme Court of Florida to the authorized house counsel, the business organization employing the authorized house counsel, and The Florida Bar.
(c) Reapplication. Nothing herein shall prevent an individual previously authorized as house counsel to reapply for authorization as set forth in rule 17-1.4.

CHAPTER 19. CENTER FOR PROFESSIONALISM

RULE 19-1.1 PURPOSE
This rule is adopted in recognition of the importance of professionalism as the ultimate hallmark of the practice of law. The purpose of this rule is to create a center to identify and enunciate non-mandatory standards of professional conduct and encourage adherence thereto. These standards should involve aspirations higher than those required by the Rules of Professional Conduct.

RULE 19-1.2 RESPONSIBILITY AND AUTHORITY
The center's responsibilities and authority shall be to:
(a) consider efforts by lawyers and judges to improve the administration of justice;
(b) examine ways of educating the public about the system of justice;
(c) monitor and coordinate Florida's professionalism efforts in such institutional settings as its bar, courts, law schools, and law firms;
(d) monitor professionalism efforts in jurisdictions outside Florida;
(e) provide guidance and support to the continuing legal education department in its implementation and execution of the continuing legal education professionalism requirement;
*1232 (f) help implement a professionalism component of the basic skills course requirement;
(g) make recommendations to the supreme court and The Florida Bar concerning additional means by which professionalism can be enhanced;
(h) receive and administer gifts and grants; and
(i) assist in the implementation of the current professionalism enhancement program as it relates to professionalism issues.

RULE 19-1.3 FUNDING
Funding for the center on professionalism shall be from The Florida Bar general fund and in such amounts as shall be established by the board of governors.

RULE 19-1.4 STAFFING, OPERATION, AND REPORTING STRUCTURE
The center shall be staffed by employees of The Florida Bar.
The physical location of the center shall be determined by the board of governors and the operation and reporting structure of the center shall be consistent with other Florida Bar programs.

RULE 19-1.5 RELATIONSHIP TO THE SUPREME COURT COMMISSION ON PROFESSIONALISM

The commission on professionalism has been established by administrative order of the Supreme Court of Florida and has been charged with the planning and implementation of an ongoing plan and policy to ensure that the fundamental ideals and values of the justice system and the legal profession are inculcated in all of those persons serving or seeking to serve in the system.
The center shall endeavor to assist the commission in this regard consistent with the center's funding, staffing, operational, and reporting structure.